Argued and submitted June 9, 2011, affirmed June 13, 2012

HOMEBUILDERS ASSOCIATION OF
METROPOLITAN PORTLAND,
an Oregon nonprofit corporation;
Eastview Development, Inc.,
an Oregon corporation;
and Matrix Development Corp.,
dba Legend Homes,
an Oregon corporation,
*Plaintiffs-Appellants,*

*v.*

METRO,
an Oregon municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
090811067; A146059

281 P3d 621

Thomas W. Brown argued the cause for appellants. With him on the briefs were Paul A. C. Berg and Cosgrave Vergeer Kester LLP.

Thomas Sponsler argued the cause for respondent. With him on the brief were Heather R. Martin and Beery, Elsner & Hammond, LLP.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, J., *vice* Rosenblum, S. J.

SERCOMBE, J.

Plaintiffs brought this action against defendant, Metro, seeking declaratory and injunctive relief related to the imposition of a construction excise tax under a Metro ordinance. Plaintiffs challenged the validity of the ordinance on the ground that it violated Oregon Laws 2007, chapter 829, section 1 (Senate Bill (SB) 1036 (2007)), *compiled as a note after* ORS 320.170 (2007).[1] That provision prohibits local governments and service districts from imposing a tax "on the privilege of constructing improvements to real property," unless, among other things, the tax is an "extension or continuation" of a tax that was already in effect. Plaintiffs also claimed that the ordinance was invalid because it was enacted without complying with Metro Code procedures for adoption of a "new tax." Metro Code (MC) 2.19.200. Metro filed a motion for summary judgment, arguing that its ordinance merely "extended" a construction excise tax that was already in effect and, thus, did not conflict with SB 1036 or MC 2.19.200. Plaintiffs filed a cross-motion for summary judgment, contending that, because the ordinance materially altered certain provisions of the preexisting tax, Metro had, in effect, imposed a "new tax" in violation of SB 1036 and MC 2.19.200. The trial court granted Metro's motion, denied plaintiffs' cross-motion, and entered a judgment in favor of Metro. Plaintiffs appeal, reprising their arguments from below. We affirm.

Where, as here, the material facts are undisputed, we review a trial court's ruling on cross-motions for summary judgment for errors of law. *Hazell v. Brown*, 238 Or App 487, 495, 242 P3d 743 (2010), *rev allowed*, 350 Or 573 (2011). In 2005, Metro convened a tax study committee to make recommendations on the possible means of funding concept and comprehensive planning for the development of expansion areas recently added to the Urban Growth Boundary (UGB). The committee was not asked to examine the costs of other regional needs, such as planning related to infrastructure, existing urban areas, or corridors; it deferred consideration of long-term planning needs until a later date. Ultimately, the

---

[1] For ease of reference, we refer to the enacted law throughout this opinion by its bill number, SB 1036.

committee recommended that Metro impose a regional construction excise tax.

In 2006, the Metro Council passed Ordinance 06-1115, which created new MC chapter 7.04. That chapter established a construction excise tax "to provide funding for regional and local planning that is required to make land ready for development after its inclusion in the Urban Growth Boundary." MC 7.04.020; *see also* MC 7.04.210 (dedicating revenue to that purpose). The tax was imposed on every person who engaged in construction within Metro's boundaries, and the rate imposed was 0.12 percent of the value of new construction. MC 7.04.070 - 7.04.080.[2] Tax revenues were to be distributed as grants to local governments based on "grant requests submitted by the local jurisdiction which set forth the expected completion of certain milestones associated with Title 11 of Metro Code Chapter 3.07, the Urban Growth Management Functional Plan." MC 7.04.220. Title 11 of MC 3.07, in turn, contained planning requirements related to the "conversion from rural to urban use of" territory added to the UGB. The construction excise tax would "sunset" when a revenue goal of $6.3 million had been collected by Metro. MC 7.04.230.[3]

Subsequently, in 2007, the legislature passed SB 1036. That bill authorized school districts to impose construction taxes in order to fund capital improvements and prohibited other local governments or service districts from imposing construction taxes until 2018. However, that prohibition

---

[2] The specific part of Ordinance 06-1115 that imposes a tax is codified as MC 7.04.070. That provision provides:

"7.04.070  Imposition of Tax

"A Construction Excise Tax is imposed on every Person who engages in Construction within the Metro Area. The tax shall be measured by the total Value of New Construction at the rate set forth in Section 7.04.080. If no additional value is created or added by the Construction and if the Construction does not constitute a Major Renovation then there shall be no tax due. The tax shall be due and payable at the time of the issuance of any building permit, or installation permit in the case of a manufactured dwelling, by any building authority."

(Underscoring in original.) In addition to the definitions codified at MC 7.04.030, other portions of the code related to the computation of the tax include MC 7.04.045 (cap on "Construction Excise Tax imposed") and MC 7.04.080 (tax rate).

[3] The adopted MC chapter 7.04 contained other provisions related to the construction tax, including those pertaining to exemptions from taxation, rulemaking authority, administration and enforcement authority, reporting responsibility, rebates, intergovernmental agreements, and enforcement processes and penalties.

did not apply to a "tax that [was] in effect as of May 1, 2007, or to the extension or continuation of such a tax, provided that the rate of tax does not increase from the rate in effect as of May 1, 2007[.]" Or Laws 2007, ch 829, § 1(2)(a).

In April 2009, Metro—aware of SB 1036—convened an advisory group to address the suitability of extending its construction excise tax, which was expected to sunset in the fall of 2009. The group recommended that the tax be extended and that it retain its current rate, exemptions, and stated purpose. However, the group advised Metro to expand the scope of projects eligible for funding, so that tax revenue could be used for planning in existing urban areas and urban reserves, in addition to new territory added to the UGB.

In June 2009, the Metro Council passed Ordinance 09-1220, which amended MC chapter 7.04 in three respects: (1) it "extended" the construction excise tax for an additional five years; (2) it allowed Metro to "retain 2.5 percent * * * of the taxes remitted to Metro for payment towards Metro's administrative expenses"; and (3) it altered the "procedures for distribution" in MC 7.04.220, so that tax revenues would be distributed to local governments based on "the expected completion of certain milestones associated with Title 11 of Metro Code Chapter 3.07, the Urban Growth Management Functional Plan." Ordinance 09-1220, Exhibit A (strikethrough in original). As noted, Title 11 of MC chapter 3.07 dealt with planning specifically for expansion areas of the UGB; the remainder of MC chapter 3.07, by contrast, dealt broadly with planning for a variety of areas within the UGB or within urban reserves.

Plaintiffs subsequently brought this action against Metro, seeking a declaration that the 2009 ordinance was invalid, an injunction against its enforcement, and restitution of money collected under the tax.[4] Plaintiffs challenged the validity of the ordinance on the grounds that (1) it imposed a new construction tax in violation of SB 1036 and (2) it failed to comply with MC 2.19.200, which required Metro to form a "tax study committee" before imposing any

---

[4] Plaintiffs' initial pleading also included a petition for a writ of review. That petition was dismissed with prejudice. Plaintiffs do not advance any assignment of error related to that dismissal.

"new tax or taxes." The parties filed cross-motions for summary judgment. The trial court concluded that the tax imposed by the 2009 ordinance was an "extension or continuation" of an existing tax and not a new tax. Thus, it determined that the ordinance violated neither SB 1036 nor MC 2.19.200. The court granted Metro's motion, denied plaintiffs' motion, dismissed plaintiffs' complaint with prejudice, and entered a general judgment for defendant.

Plaintiffs now advance two assignments of error on appeal. First, plaintiffs contend that the trial court erred in concluding that the 2009 construction excise tax was an "extension or continuation" of the 2006 tax and therefore did not conflict with SB 1036. According to plaintiffs, because the 2009 ordinance adjusted the allocation of tax proceeds, that ordinance did not merely extend or continue the existing tax; rather, in plaintiffs' view, the ordinance imposed a "new tax." Second, plaintiffs contend that the trial court erred in concluding that Metro was not required to form a tax study committee under MC 2.19.200 before the imposition of the 2009 construction excise tax. Metro responds that SB 1036 does not limit its authority to reallocate portions of construction tax revenue to new uses "so long as the rate of tax does not increase."

At the outset, the parties disagree about the methodology to be used in construing the meaning of SB 1036. Metro claims that statutes preempting the authority of local governments should be narrowly construed. Metro relies upon *LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204 (1978). In that case, the Supreme Court set out standards for determining whether and how a state statute could preempt a local ordinance of a home rule city. The court reasoned that the first step in analyzing inconsistent state and local enactments is to determine whether the legislature intended the state law to have preemptive effect, either expressly or impliedly. That initial inquiry is

"whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive. It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature

does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent."

*Id.* at 148-49 (footnote omitted).

Thus, a narrowing construction of state law to avoid preemptive effect is not permissible if "that intention is apparent." That is the case here. SB 1036 was clearly intended to preempt local governments and service districts from imposing construction taxes, except in limited circumstances. Or Laws 2007, ch 829, § 1(1) ("A local government or local service district * * * may not impose a tax on the privilege of constructing improvements to real property except" in certain circumstances). The legislative history supports that determination. *See, e.g.*, Staff Measure Summary, Conference Committee, SB 1036B (June 22, 2007) (explaining that the bill "[p]reempts local governments from using a construction tax until 2018, but grandfathers in local government construction taxes already in effect as of May 1, 2007[,] or in the process of being adopted").

The issue in this case is whether Metro's ordinance falls within the scope of the statutory preemption. That is a question of statutory construction resolved by resort to the familiar methodology set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), starting with the statutory text in context. *See Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 299, 981 P2d 368 (1999) (applying statutory construction methodology to determine "the extent of the intended preemptive effect of state law").

Section 1 of SB 1036 provides, in relevant part:

"(1)   A local government or local service district, as defined in ORS 174.116, or a special government body, as defined in ORS 174.117, may not impose a tax on the privilege of constructing improvements to real property except as provided in sections 2 to 8 of this 2007 Act.

"(2)   Subsection (1) of this section does not apply to:

"(a)   A tax that is in effect as of May 1, 2007, or to the extension or continuation of such a tax, provided that the rate of tax does not increase from the rate in effect as of May 1, 2007;

"(b)   A tax on which a public hearing was held before May 1, 2007; or

"(c)   The amendment or increase of a tax adopted by a county for transportation purposes prior to May 1, 2007, provided that the proceeds of such a tax continue to be used for those purposes."

Or Laws 2007, ch 829, § 1(1), (2).

The parties' arguments focus on the meaning of "extension or continuation" and on the context of the statute. We start with a more fundamental inquiry into the meaning of the term "tax." That term is not defined in the statute. Although we give words of common usage their plain and ordinary meaning, *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), the word "tax" is most often used in a legal context. Thus, we look first to its technical legal meaning. "Tax" is defined as "[a] monetary charge imposed by the government on persons, entities, transactions, or property to yield public revenue." *Black's Law Dictionary* 1496 (8th ed 2004). Its common meaning is virtually identical. *See Webster's Third New Int'l Dictionary* 2345 (unabridged ed 2002) (defining "tax" to mean "a usu. pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes : a forced contribution of wealth to meet the public needs of a government").

Those definitions refer to the charge imposed, that is, the monetary burden or obligation required to be paid, rather than to the use of the funds raised (within the broad parameter that the funds be used for public purposes or needs). Furthermore, the text of SB 1036 evinces a legislative preclusion of the *imposition* of the obligation and not of some other action of the local government, such as the distribution of the proceeds of a tax, or its enforcement or collection. *See* Or Laws 2007, ch 829, §1(1) ("A local government or local service district * * * may not *impose a tax* on the privilege of constructing improvements to real property." (Emphasis added.)). A government "imposes" a tax when it creates a legal obligation to pay the charge. *See Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 379, 851 P2d 595 (1993) (so noting).

Thus, the text of the statute indicates that subsection (1), which prohibits "impos[ing] a tax" on construction, applies only to those portions of a local government enactment that relate to the imposition of a charge and not to other elements of an ordinance that may in some way relate to the administration of a tax but do not directly bear on its imposition. In other words, the legislature intended to preempt only a local government's creation of a legal obligation to pay a charge. The use of tax proceeds does not directly bear on the imposition of the charge, unlike, for instance, the class of persons or things being taxed or the rate of the tax. It follows that, in this case, SB 1036 does not preempt those portions of the ordinance related to the distribution of proceeds, because those provisions do not "impose a tax" within the meaning of the statute.[5]

Of course, Metro's 2009 ordinance did more than reallocate the proceeds of the construction excise tax. It also "extended" the tax for an additional five years. That provision had the effect of reimposing the tax for a longer period of time; in other words, it created an additional liability. Because that provision did directly bear on the imposition of a charge on the privilege of construction, it fell within the preemption of subsection (1) of the statute. Nevertheless, that provision of the ordinance does not conflict with SB 1036 because it falls within the express exception in subsection (2)(a), which allows for the reimposition of a tax where it is an "extension or continuation" of a preexisting tax.

Subsection (2)(a) provides that the preemption of subsection (1) "does not apply to * * * [a] tax that is in effect as of May 1, 2007, or to *the extension or continuation of such a tax*, provided that the rate of tax does not increase from the rate in effect as of May 1, 2007[.]" Or Laws 2007, ch 829, § 1(2)(a) (emphasis added). "Extension" and "continuation" are not defined in the statute. The parties assume that both of those terms, as used in SB 1036, refer to an addition of

---

[5] This is not to say that a law imposing a tax need not also contain a provision dedicating the proceeds of the tax to a governmental purpose. *See* Or Const, Art IX, § 3 ("No tax shall be levied except in accordance with law. Every law imposing a tax shall state distinctly the purpose to which the revenue shall be applied."). It is only to say that not all parts of an ordinance imposing a construction tax are affected by SB 1036, only those portions that pertain to the imposition of the tax.

time to the duration of the tax. We agree that the common meaning of "extension" and "continuation" does encompass a lengthening of time or duration, although the terms may not necessarily be limited to just that meaning. *See Webster's* at 804 (defining "extension" to mean, among other things, "an increase in length of time" and "increased or continued duration"); *id.* at 493 (defining "continuation" to mean, among other things, "uninterrupted extension or succession" and "the action of carrying on or resuming").

We normally seek to give independent effect to all words in a statute. ORS 174.010. The parties do not proffer distinct meanings for "extension" or "continuation," and it is difficult to discern from the text of the statute what precise meanings were intended by the legislature. Nevertheless, we need not resolve that issue in order to answer the question in this case. That is so because, whatever "extension" and "continuation" may mean, those terms, at a minimum, include the carrying on or lengthening of the duration of a tax. Here, the provision of the 2009 ordinance purporting to "extend[ ]" the tax did no more than that. Nor did it violate the proviso that the "rate of tax * * * not increase." Thus, the exception in subsection (2)(a) applied.

Although the parties also offer competing contextual interpretations, we think the text of SB 1036, as applied to this case, is clear. As noted, the 2009 ordinance did only three things: it expanded the allowable uses of tax proceeds, permitted payment of administrative expenses from those proceeds, and lengthened the duration of the tax. The first two changes did not fall within the preemption of SB 1036. The third, although falling within the preemption of SB 1036, was explicitly excepted as an "extension or continuation" of an existing tax. Thus, Metro's 2009 ordinance did not conflict with SB 1036. Furthermore, because we conclude that Metro's ordinance was, in pertinent part, an extension or continuation of a tax, rather than the imposition of a "new tax," Metro was not required to convene a "tax study committee" under MC 2.19.200. That provision, by its terms, applies only when Metro imposes a "new tax or taxes." Thus, plaintiffs' second assignment of error also fails.

In short, we conclude that Metro's 2009 ordinance was not invalid in the challenged respects. Accordingly, the trial court did not err in entering judgment for defendant.

Affirmed.