Argued and submitted January 7, 2019, vacated and remanded July 8, petition for review allowed November 19, 2020 (367 Or 257)
See later issue Oregon Reports

Phillip E. OWEN,
an individual;
Owen Properties, LLC,
an Oregon limited liability company;
and Michael L. Feves, an individual,
*Plaintiffs-Appellants,*

*v.*

CITY OF PORTLAND,
an Oregon municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
17CV05043; A165633

470 P3d 390

Plaintiffs brought this declaratory judgment action against the City of Portland, challenging city Ordinance 188219, which amended a city code provision that added tenant protections to address a declared city housing emergency. Most notably, the ordinance requires landlords to pay relocation assistance to tenants under certain circumstances. The trial court granted summary judgment to the city and dismissed plaintiffs' complaint. On appeal, plaintiffs argue that the trial court erred, because the city's ordinance is preempted by state law, violates Article I, section 21, of the Oregon Constitution, and impermissibly provides a private right of action to tenants to enforce rights created by the ordinance. *Held*: (1) The ordinance does not fall within the scope of the prohibition in ORS 91.225 on local rent control ordinances, (2) the ordinance is not implicitly preempted by ORS 90.427 (2017), because that statute sets out only minimum requirements for no-cause terminations, (3) plaintiffs failed to make a cognizable argument under Article I, section 21, and (4) plaintiffs' argument regarding the private cause of action is foreclosed by case law. Thus, the trial court did not err in any of the ways asserted by plaintiffs. However, the trial court's dismissal of the case was not the proper disposition of plaintiffs' declaratory judgment action, and therefore the judgment is vacated and remanded so that the trial court can issue a judgment declaring the respective rights of the parties.

Vacated and remanded.

Henry C. Breithaupt, Judge pro tempore.

John DiLorenzo, Jr., argued the cause for appellants. Also on the briefs were Kevin H. Kono, P. Andrew McStay, Jr., and Davis Wright Tremaine LLP.

Denis M. Vannier argued the cause and filed the brief for respondent.

W. Michael Gillette argued the cause on behalf of *amicus curiae* Oregon Association of Realtors. Also on the brief were Sara Kobak and Schwabe, Williamson & Wyatt P.C.

Andrea N. Ogston argued the cause on behalf of *amici curiae* Legal Aid Services of Oregon and Oregon Law Center. Also on the joint brief were Christina L. Dirks, Stephen S. Walters, and Rebecca Straus.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

ORTEGA, P. J.

Vacated and remanded.

ORTEGA, P. J.

Plaintiffs brought this declaratory judgment action against the City of Portland, challenging city Ordinance 188219, which amended a code provision that added tenant protections to address a declared city housing emergency. Most notably, the ordinance requires landlords to pay relocation assistance to tenants under certain circumstances. Plaintiffs argued that the ordinance is invalid under various aspects of state law. The parties brought cross-motions for summary judgment on all issues, and the trial court granted the city's motion and denied plaintiffs' motion.

On appeal from the resulting judgment dismissing plaintiffs' case, plaintiffs advance four arguments: (1) the provision in the ordinance that requires landlords to pay relocation assistance to tenants following a rent increase of 10 percent or more if the tenant responds by terminating the tenancy is expressly preempted by the prohibition on rent control ordinances in ORS 91.225; (2) the provision in the ordinance that requires the payment of relocation assistance to a tenant after a no-cause termination of a tenancy is implicitly preempted by ORS 90.427 (2017), *amended by* Or Laws 2019, ch 1, § 1; (3) the application of the ordinance to existing contracts is an unconstitutional impairment of the obligations of contracts, in violation of Article I, section 21, of the Oregon Constitution; and (4) the ordinance impermissibly provides a private right of action to tenants to enforce rights created by the ordinance.

We conclude that (1) the ordinance does not fall within the scope of the prohibition in ORS 91.225 on local rent control ordinances, (2) the ordinance is not implicitly preempted by ORS 90.427 (2017), because that statute sets out only minimum requirements for no-cause terminations, (3) plaintiffs failed to make a cognizable argument under Article I, section 21, and (4) plaintiffs' argument regarding the private cause of action is foreclosed by *Sims v. Besaw's Cafe*, 165 Or App 180, 997 P2d 201 (2000). We thus conclude that the trial court did not err in any of the ways asserted by plaintiffs. We further conclude that the trial court's dismissal of the case was not the proper disposition of plaintiffs' declaratory judgment action, and we therefore vacate

and remand the judgment so that the trial court can issue a judgment declaring the respective rights of the parties. *See, e.g.*, *Western Radio Services Co. v. Verizon Wireless, LLC*, 297 Or App 446, 454, 442 P3d 218, *rev den*, 365 Or 534 (2019) (explaining that the proper disposition in a declaratory judgment action is issuance of a declaration as to the rights of the parties).

On February 2, 2017, the city adopted Ordinance 188219 (the ordinance), which amended Portland Comprehensive Code (PCC) 30.01.085.[1] As set out below, the ordinance added requirements that landlords pay relocation assistance to displaced tenants under certain circumstances. To support the addition of relocation assistance to the city's tenant protections, the city made extensive findings about the state of the rental market, rental supply, the effect of rent increases on involuntarily displacing tenants, and the barriers to those displaced tenants' ability to obtain new housing. Based on those findings, the ordinance states:

"16. Accordingly, the Portland Renter Protections set forth in City Code Chapter 30.01.085 are amended to include for the provision of relocation assistance for tenants receiving a 90-day notice for a no-cause termination of tenancy or an Economic Eviction ('Relocation Assistance').

"17. Relocation Assistance amounts were determined by averaging the range of rental rates of similarly sized units across the city according to the Housing Report. Averaging the range of rents also creates an equitable flat fee that does not vary based on the current rent paid, thus giving property owners a fixed amount to plan for."

The ordinance then amended PCC 30.01.085, in part, by adding the following underscored text:

"A. In addition to the protections set forth in the Residential Landlord and Tenant Act [(the Act)], the following additional protections apply to Tenants that have a Rental Agreement for a Dwelling Unit~~Premises~~ covered by the Act. For purposes of this chapter, capitalized terms

---

[1] Since enactment of the ordinance in 2017, the city has further amended PCC 30.01.085. Plaintiffs have not challenged those amendments, which materially altered the code in certain respects, but not in any manner that renders plaintiffs' arguments moot. As a result, in this opinion, we refer only to the 2017 version of PCC 30.01.085 or to "the ordinance."

have the meaning set forth in the Residential Landlord and Tenant Act.

"B.    A Landlord may terminate a Rental Agreement without a cause specified in the Act only by delivering a written notice of termination (the 'Termination Notice') to the Tenant of (a) not less than 90 days before the termination date designated in that notice as calculated under the Act; or (b) the time period designated in the Rental Agreement, whichever is longer. Not less than 45 days prior to the termination date provided in the Termination Notice, a Landlord shall pay to the Tenant, as relocation assistance, a payment ('Relocation Assistance') in the amount that follows: $2,900 for a studio or single room occupancy ('SRO') Dwelling Unit, $3,300 for a one-bedroom Dwelling Unit, $4,200 for a two-bedroom Dwelling Unit and $4,500 for a three-bedroom or larger Dwelling Unit. TheThis requirements of this Subsection does not apply to Rental Agreements for week-to-week tenancies, or to a Landlord who rents out or leases out only one Dwelling Unit in the City of Portland, or to a Landlord who temporarily rents out the Landlord's principal residence during the Landlord's absence of not more than 3 years, or to Tenants that occupy the same Dwelling Unit as the Landlord. For purposes of the exception provided in this Subsection, 'Dwelling Unit' is defined by PCC 33.910, and not by ORS 90.100. For purposes of this Subsection, a Landlord that declines to renew or replace an expiring fixed-term lease on substantially the same terms except for the amount of Rent or Associated Housing Costs terminates the Rental Agreement and is subject to the provisions of this Subsection.

"C.    *** If, within 14 days after a Tenant receives an Increase Notice indicating a Rent increase of 10 percent or more within a 12 month period and a Tenant provides written notice to the Landlord of the Tenant's intent to terminate the Rental Agreement (the 'Tenant's Notice'), then, within 14 days of receiving the Tenant's Notice, the Landlord shall pay to the Tenant Relocation Assistance in the amount that follows: $2,900 for a studio or SRO Dwelling Unit, $3,300 for a one-bedroom Dwelling Unit, $4,200 for a two-bedroom Dwelling Unit and $4,500 for a three-bedroom or larger dwelling unit. For purposes of this Subsection, a Landlord that conditions the renewal or replacement of an expiring lease on the Tenant's agreement to pay an increase in the Rent or Associated Housing

Costs increases the Tenant's Rent, and is subject to the provisions of this Subsection. The requirements of this Subsection do not apply to Rental Agreements for week-to-week tenancies, or to a Landlord who rents out only one Dwelling Unit in the City of Portland, or to a Landlord who temporarily rents out the Landlord's principal residence during the Landlord's absence of not more than 3 years, or to Tenants that occupy the same Dwelling Unit, as defined in Subsection B. of this Section, as the Landlord.

"D.   A Landlord that fails to comply with any of the requirements set forth in this Section 30.01.085 shall be liable to the Tenant for an amount up to three months Rent as well as actual damages, Relocation Assistance, reasonable attorney fees and costs (collectively, 'Damages'). Any Tenant claiming to be aggrieved by a Landlord's noncompliance with the foregoing has a cause of action in any court of competent jurisdiction for Damages and such other remedies as may be appropriate."

(Underscoring and strike outs in original.) The ordinance took effect upon its passage and applied to existing rental agreements.

Plaintiffs are landlords that rent property within the city. They filed this declaratory judgment action against the city, contending that the ordinance is expressly preempted by ORS 91.225, is implicitly preempted by ORS 90.427 (2017), is in violation of Article I, section 21, as it applies to existing leases, and impermissibly creates a private cause of action.

On cross-motions for summary judgment, the trial court rejected each of plaintiffs' arguments, denying plaintiffs' motion for summary judgment and granting the city's motion for summary judgment. The court then entered a general judgment dismissing plaintiffs' action. Plaintiffs appeal from that judgment, asserting that the ordinance is invalid for the same reasons raised below.

"When, as here, the facts are not in dispute, we review rulings on cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law." *Busch v. Farmington Centers Beaverton*, 203 Or App 349, 352, 124 P3d 1282 (2005), *rev den*, 341 Or 216 (2006). We address each of plaintiffs' arguments in turn.

Plaintiffs first argue that ORS 91.225 expressly pre-empts the provision in the ordinance that requires a landlord to pay relocation assistance to a tenant when the landlord increases rent by 10 percent or more within a 12-month period and the tenant terminates the rental agreement.

Plaintiffs' argument implicates the authority of the city to enact the ordinance and, thus, the home-rule provisions of the Oregon Constitution. *Rogue Valley Sewer Services v. City of Phoenix*, 357 Or 437, 445, 353 P3d 581 (2015) (*Rogue Valley*). "Home rule is the authority granted to Oregon's cities by Article XI, section 2, and Article IV, section 1(5), of the Oregon Constitution—adopted by initiative petition in 1906—to regulate to the extent provided in their charters." *Id.* "Under a city's home-rule authority, 'the validity of local action depends, first, on whether it is authorized by the local charter or by a statute[, and] second, on whether it contravenes state or federal law.'" *Id.* at 450 (quoting *La Grande/Astoria v. PERB*, 281 Or 137, 142, 576 P2d 1204, *adh'd to on recons*, 284 Or 173, 586 P2d 765 (1978) (brackets in *Rogue Valley*)). Plaintiffs do not contend that the ordinance was not authorized by the city's charter; rather, plaintiffs argue that it contravenes state law. We thus must determine "'whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive.'" *Id.* (quoting *La Grande/Astoria*, 281 Or at 148).

In addressing whether state law has preempted the ordinance, we assume that the legislature has not meant to displace local regulation unless that intention is apparent. "A state statute will displace the local rule where the text, context, and legislative history of the statute '*unambiguously* expresses an intention to preclude local governments from regulating' in the same area as that governed by the statute." *Id.* at 450-51 (quoting *Gunderson, LLC v. City of Portland*, 352 Or 648, 663, 290 P3d 803 (2012) (emphasis in *Rogue Valley*)).

It is undisputed here that the legislature has expressed an unambiguous intention to preempt local regulation that operates in the "same area" as ORS 91.225. The

question with regard to plaintiffs' first argument is whether the ordinance is such a regulation, and, to answer that question, we must determine what precisely is the "area" that the legislature intended to preempt. To determine the legislature's intention in that regard, we apply our usual approach and examine the statutory text in context, along with any helpful legislative history. *Homebuilders Ass'n of Metropolitan Portland v. Metro*, 250 Or App 437, 443, 281 P3d 621 (2012); *see also Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 299, 981 P2d 368 (1999) ("In this case, there is no dispute that the legislature intended state law to preempt local law to some extent. The only question is the extent of the intended preemptive effect of state law. We ascertain the legislature's intentions in that regard by reference to the usual sources of statutory [interpretation].").

We start with the relevant text of ORS 91.225. That statute provides, in part:

"(1)   The Legislative Assembly finds that there is a social and economic need to insure an adequate supply of affordable housing for Oregonians. The Legislative Assembly also finds that the imposition of general restrictions on housing rents will disrupt an orderly housing market, increase deferred maintenance of existing housing stock, lead to abandonment of existing rental units and create a property tax shift from rental-owned to owner-occupied housing. Therefore, the Legislative Assembly declares that the imposition of rent control on housing in the State of Oregon is a matter of statewide concern.

"(2)   Except as provided in subsections (3) to (5) of this section, a city or county shall not enact any ordinance or resolution which controls the rent that may be charged for the rental of any dwelling unit.

"* * * * *

"(6)   As used in this section, 'dwelling unit' and 'rent' have the meaning given those terms in ORS 90.100.

"(7)   This section is applicable throughout this state and in all cities and counties therein. The electors or the governing body of a city or county shall not enact, and the governing body shall not enforce, any ordinance, resolution or other regulation that is inconsistent with this section."

In turn, ORS 90.100(37) defines "rent," in relevant part, as "any payment to be made to the landlord under the rental agreement, periodic or otherwise, in exchange for the right of a tenant and any permitted pet to occupy a dwelling unit to the exclusion of others and to use the premises."

The operative text, read with the relevant portion of the statutory definition of rent, provides that "a city or county shall not enact any ordinance or resolution which controls ['any payment to be made to the landlord under the rental agreement'] that may be charged for the rental of any dwelling unit." ORS 91.225(2); ORS 90.100(37). The word "control" is not statutorily defined. The dictionary defines "control," when used as a verb, as "to exercise restraining or directing influence over : REGULATE, CURB." *Webster's Third New Int'l Dictionary* 496 (unabridged ed 2002). Thus, the common meaning of the operative text in ORS 91.225(2) is that it prohibits local ordinances that regulate the payment to be made to a landlord under a rental agreement in exchange for the right of the tenant to occupy a dwelling unit.

Plaintiffs argue that that text expresses an intention to preempt "[a]ny local enactment that has the *effect* of 'controlling'—that is, restraining or exercising influence over to limit—the rent that may be charged." (Emphasis in plaintiffs' brief.) Plaintiffs argue that the legislative findings in ORS 91.225(1) support their reading of the statute, because they express an intention to broadly preempt any local ordinance that directly or indirectly controls rent. The city, however, argues that the text, as confirmed in the legislative findings of subsection (1), only preempts "rent control"—that is, the amount a landlord may charge for rent—and does not apply to other matters, such as relocation assistance under the ordinance. Based on the text of the statute, when read in context, we agree with the city that the legislature did not intend to broadly prohibit any regulation that could tend to have a restraining effect on rent. Rather, the statute is solely directed at prohibiting local "rent control," which the legislature intended to mean the direct regulation of the amount of rent to be paid to a landlord.

First, the legislative findings in ORS 91.225(1) expressly provide that the legislature was concerned solely with local enactments of "rent control," which it identified as "the imposition of general restrictions on housing rents." In line with the legislature's understanding, the term "rent control" is commonly understood to mean regulation of the amount that a landlord can charge as rent on a dwelling unit.[2] *Webster's* at 496 ("control" when used as a noun, such as in the term "rent control," is defined as "the regulation of economic activity esp. by government directive (price ~s) (wage ~s) (rent ~)"); *id.* at 1923 ("rent control" is defined as "government regulation of the amount charged as rent for housing and often also of eviction"); *see also Black's Law Dictionary* 1552 (11th ed 2019) (defining "rent control" as "[a] restriction imposed, usu. by municipal legislation, on the maximum rent that a landlord may charge for rental property, and often on a landlord's power of eviction").

Second, the exceptions to ORS 91.225(2) that are set out in ORS 91.225(3) to (5) further confirm that the legislature intended "rent control" to apply to the regulation of the amount that a landlord may charge in rent, because those subsections discuss exceptions for regulating rental amounts. Those subsections provide:

"(3)   This section does not impair the right of any state agency, city, county or urban renewal agency as defined by ORS 457.035 to reserve to itself the right to approve rent increases, establish base rents or establish limitations on rents on any residential property for which it has entered into a contract under which certain benefits are applied to the property for the expressed purpose of providing reduced rents for low income tenants. Such benefits include, but are not limited to, property tax exemptions, long-term financing, rent subsidies, code enforcement procedures and zoning density bonuses.

"(4)   Cities and counties are not prohibited from including in condominium conversion ordinances a requirement

---

[2] The common meaning of "rent control" can also include government regulation of the landlord's power of eviction. However, that does not appear to be encompassed within the legislature's intended meaning of rent control in ORS 91.225, as the statutory text only refers to the payment of rent. In any event, plaintiffs have not raised a challenge under ORS 91.225 to the ordinance provision relating to a landlord's power to evict.

that, during the notification period specified in ORS 100.305, the owner or developer may not raise the rents of any affected tenant except by an amount established by ordinance that does not exceed the limit imposed by ORS 90.493.

"(5) Cities, counties and state agencies may impose temporary rent controls when a natural or man-made disaster that materially eliminates a significant portion of the rental housing supply occurs, but must remove the controls when the rental housing supply is restored to substantially normal levels."

Third, as further context, a prior case applying ORS 91.225 supports our understanding. In *Cope v. City of Cannon Beach*, 115 Or App 11, 836 P2d 775 (1992), *aff'd*, 317 Or 339, 855 P2d 1083 (1993), the petitioners challenged a city ordinance that prohibited the rental for money of dwellings for less than 14 days in some residential zones. One of the petitioners' challenges was that the ordinance was prohibited by ORS 91.225, as constituting a rental control measure. We rejected that argument as a "word game," because "[t]he ordinance does not have any bearing on the rent that a lessor may charge." *Id.* at 15. Thus, as we interpreted ORS 91.225 in that case, "rent control" means restrictions on the rent that a lessor can charge.

From the foregoing, we conclude that the legislature unambiguously intended to preempt local "rent control" ordinances, which are ordinances that regulate the amount that a landlord may charge in rent. There is nothing in the statute's text, context, or legislative history[3] that supports a conclusion that the legislature unambiguously intended to preempt other types of restrictions. *Rogue Valley*, 357 Or at 450-51 ("A state statute will displace the local rule where the

---

[3] The city and *amici* have provided extensive legislative history for ORS 91.225. We have reviewed that history, and it confirms that the legislature intended to prohibit "rent control." It also contains testimony and exhibits that are focused on the effect of direct restrictions on rent increases, and a long list of examples of local regulations in other states, all of which appear to include some form of direct control on the amount of rent that can be charged. That testimony and those exhibits tend to confirm our analysis. However, we have found nothing in that history that is more informative of the legislature's intended meaning of "rent control" than what is contained within the findings that the legislature adopted in ORS 91.225(1) and the text of the statute as a whole. Thus, we do not further discuss that history.

text, context, and legislative history of the statute *unambig-uously* expresses an intention to preclude local governments from regulating in the same area as that governed by the statute." (Internal quotation marks omitted; emphasis in original.)).

We now turn to the ordinance at issue and address whether it falls within the "same area" as ORS 91.225. Plaintiffs argue that the ordinance falls within the stat-ute's prohibitory scope, because it seeks to control rent by imposing significant penalties—in the form of relocation assistance—on a landlord if the landlord raises rent by 10 percent or more in a 12-month period. The city responds that nothing in the ordinance controls the rent that a land-lord may charge, emphasizing that, under the ordinance, a landlord is free to charge any amount for rent. The ordi-nance only provides that the landlord must pay a departing tenant a one-time relocation assistance payment *if* the rent is increased by 10 percent or more in a 12-month period *and* the tenant elects to terminate the tenancy.

We agree with the city that the ordinance is not "rent control," because it does not regulate the amount of rent that a landlord may charge.[4] That it may have the effect of incentivising landlords to keep rent increases below the 10-percent threshold does not make the ordinance a "rent control" ordinance that is unambiguously preempted by ORS 91.225. Rather, the ordinance requires the payment of a set amount as relocation assistance under certain circum-stances, notably including the circumstance that the tenant elects to end the tenancy. That is, the ordinance does not fall

---

[4] For reference, the provision challenged by plaintiffs under ORS 91.225 pro-vides, in relevant part:

"If, within 14 days after a Tenant receives an Increase Notice indicat-ing a Rent increase of 10 percent or more within a 12 month period and a Tenant provides written notice to the Landlord of the Tenant's intent to terminate the Rental Agreement (the 'Tenant's Notice'), then, within 14 days of receiving the Tenant's Notice, the Landlord shall pay to the Tenant Relocation Assistance * * *. For purposes of this Subsection, a Landlord that conditions the renewal or replacement of an expiring lease on the Tenant's agreement to pay an increase in the Rent or Associated Housing Costs increases the Tenant's Rent, and is subject to the provisions of this Subsection."

PCC 30.01.085(C) (2017).

within the common understanding of "rent control" that the legislature intended when it enacted ORS 91.225.

Plaintiffs assert, however, that, even if the ORS 91.225(2) ban on rent control does not explicitly preempt the ordinance, the ORS 91.225(7) ban on enacting an ordinance that is "inconsistent" with the statute does preempt the ordinance. ORS 91.225(7) provides:

> "This section is applicable throughout this state and in all cities and counties therein. The electors or the governing body of a city or county shall not enact, and the governing body shall not enforce, any ordinance, resolution or other regulation that is inconsistent with this section."

Plaintiffs argue that the prohibition in ORS 91.225(7) is even broader than that in ORS 91.225(2) and, thus, demonstrates the legislature's intention to preempt local legislation that indirectly controls imposition of rent.

We reject that additional argument. As discussed above, the legislature, by enacting ORS 91.225, was concerned solely with "rent control." The catchall in ORS 91.225(7) does not expand that scope. Rather, ORS 91.225(7) only reinforces the prohibition on rent control by explicitly prohibiting local electors from enacting and local governments from enforcing local rent control regulation. We thus conclude that the challenged provision in the ordinance is not preempted by ORS 91.225.

In plaintiffs' second argument, they challenge the provision in the ordinance that requires the payment of relocation assistance for a no-cause termination of a month-to-month tenancy or a fixed-term tenancy.[5] Plaintiffs assert that that provision is implicitly preempted by ORS 90.427

---

[5] The no-cause termination provision in the ordinance does not, by its terms, apply to week-to-week tenancies. PCC 30.01.085(B) (2017). Further, "Rental Agreement," as used in the ordinance, applies to week-to-week tenancies, month-to-month tenancies, and fixed-term tenancies for a dwelling unit. PCC 30.01.085(A) (2017) ("For purposes of this chapter, capitalized terms have the meaning set forth in the Residential Landlord and Tenant Act."); ORS 90.100(38) (Defining "rental agreement" as "all agreements, written or oral, and valid rules and regulations adopted under ORS 90.262 or 90.510(6) embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises. 'Rental agreement' includes a lease. A rental agreement is either a week-to-week tenancy, month-to-month tenancy or fixed term tenancy.").

(2017), which sets out a process for no-cause terminations with notice of less than the 90 days required by the ordinance, and no payment of relocation assistance.[6] Plaintiffs assert that the statute must be read in the context of the entire Oregon Residential Landlord and Tenant Act (ORLTA), ORS chapter 90, which, plaintiffs assert, "reflects the legislature's balancing of landlord and tenant rights and obligations with respect to termination of tenancies and the landlord's right to possession of the property in each instance following termination." With that view, plaintiffs argue that the ordinance and ORS 90.427 (2017) cannot operate concurrently, because the legislature intended that landlords could terminate tenancies solely by giving the notice set out in ORS 90.427 (2017),[7] and, after that notice period, regain

_____

[6] In 2019, the legislature significantly amended ORS 90.427 with respect to no-cause termination of month-to-month tenancies and fixed-term tenancies. Those amendments apply to fixed-term tenancies "entered into or renewed on or after" February 28, 2019, and to terminations "of month-to-month tenancies occurring on or after the 30th day after" February 28, 2019. Or Laws 2019, ch 1, § 11. However, the length of notice a landlord must give under ORS 90.427 to terminate a tenancy without cause, for those circumstances in which termination without cause continues to be permissible, remains shorter than the 90-day notice required by the ordinance, and there is no requirement for payment of relocation assistance. *See* ORS 90.427(3)(b) (permitting termination of a month-to-month tenancy in the first year by written notice "not less than 30 days"); ORS 90.427(4)(b) (permitting termination of a fixed-term tenancy, if the ending date falls within the first year of occupancy, by giving written notice of "not less than 30 days" before the end date of the tenancy or the date in the notice, whichever is later); ORS 90.427(8)(a)(B) - (C) (permitting termination of a month-to-month tenancy that is located in the same building or on the same property as the landlord's primary residence, after the first year of occupancy, by giving written notice of "not less than 60 days" or, under the three circumstances set out in the statute, by written notice of "not less than 30 days"); ORS 90.427(8)(b)(B) (permitting termination of a fixed-term tenancy that is located in the same building or on the same property as the landlord's primary residence, at any time during the fixed term, by giving written notice of "not less than 30 days" before the end date of the tenancy or the date in the notice, whichever is later). Thus, those amendments do not affect our preemption analysis as framed by plaintiffs' arguments. *See Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or App 457, 468 n 3, 228 P3d 650, *rev den*, 348 Or 524 (2010) (subsequent amendment to state statute did not moot preemption issues where the amendments neither expressly preempted nor ratified the city ordinances and did not change the statute in a way that affected the preemption analysis).

[7] Separately, plaintiffs also argue that the no-cause termination provision in the ordinance, as applied to fixed-term tenancies, is preempted by ORS 91.080, because that statute provides that a fixed-term tenancy ends on the fixed date with no notice required. We decline to address plaintiffs' argument that the ordinance is preempted by ORS 91.080, because plaintiffs did not raise it in their complaint as a basis for declaratory relief, nor did they request such a declaration in their motion for summary judgment. *See, e.g.*, *Rogue Valley*, 357 Or at

possession. *See* ORS 90.427(7) (2017), *renumbered as* ORS 90.427(11) ("If the tenant remains in possession without the landlord's consent after expiration of the term of the rental agreement or its termination, the landlord may bring an action for possession."). Plaintiffs argue that the ordinance's additional requirements take away the *right* given to landlords to terminate and regain possession without cause based solely on the notices in ORS 90.427 (2017).

Plaintiffs' arguments again implicate the city's home-rule authority to enact local legislation. As stated above, "'the validity of local action depends, first, on whether it is authorized by the local charter or by a statute[, and] second, on whether it contravenes state or federal law.'" *Rogue Valley*, 357 Or at 450 (quoting *La Grande/Astoria*, 281 Or at 142 (brackets in *Rogue Valley*)). Plaintiffs do not challenge the city's authority under its charter, and we do not address that aspect. In assessing whether the ordinance contravenes state law, we must determine "'whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive.'" *Id.* (quoting *La Grande/Astoria*, 281 Or at 148).

With respect to ORS 90.427 (2017), plaintiffs assert only that the ordinance and the statute cannot operate concurrently. When conducting that type of conflict analysis, "we must construe the local law, 'if possible, to be intended to function consistently with state laws.'" *Qwest Corp. v. City of Portland*, 275 Or App 874, 883, 365 P3d 1157 (2015), *rev den*, 360 Or 465 (2016) (quoting *La Grande/Astoria*, 281 Or at 148). The analysis "requires us to interpret both the statute and the municipal law to determine if they can function concurrently or if they necessarily conflict." *Id.* "To that end, we first determine the meaning of [the statute], and then we determine whether, properly interpreted the [city's ordinance] cannot be harmonized with that statute." *Id.*

---

457-48 (even if the motion for summary judgment might provide a basis to seek an amendment to a complaint, the court may not award declaratory relief that is outside the relief sought in the complaint); *Brown v. Brown*, 206 Or App 239, 249, 136 P3d 745, *rev den*, 341 Or 449 (2006) ("In short, in a proceeding for declaratory relief, the claimant's pleading must allege a cognizable theory of relief, which if proved, would support the declaration sought.").

Here, in interpreting ORS 90.427 (2017), which is part of the ORLTA, we are not starting anew. In *Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or App 457, 228 P3d 650 *rev den*, 348 Or 524 (2010) (*Thunderbird*), we addressed a similar argument that the ORLTA preempted local ordinances that added obligations for landlords. In *Thunderbird*, the City of Wilsonville had passed ordinances that regulated the closure of mobile home parks by requiring an owner to obtain a closure permit from the city and compensate displaced tenants. *Id.* at 460. The plaintiff argued that that ordinance was preempted by provisions in the ORLTA that regulated mobile home parks and set forth procedures for closing them. *Id.* at 473-74. We rejected that challenge, emphasizing that an ordinance is preempted only to the extent that the operation of the ordinance makes "it impossible to comply with a state statute." *Id.* at 474. There, "the city ordinances still allow[ed] compliance with the less-generous requirements of the [ORLTA]" and thus both could operate concurrently. *Id.* In coming to that conclusion, we rejected the plaintiff's argument that the city could not prohibit what the ORLTA allowed—that is, closure of a mobile home park without obtaining a permit and paying certain compensation to displaced tenants. We adhered to case law that "a civil regulation of a chartered city will not be displaced under Article XI, section 2, merely because state law regulates less extensively in the same area." *Id.* We further explained that preemption principles that apply to municipal criminal laws does not apply to municipal civil regulations and that, under *La Grande/Astoria*, the ordinances were not preempted. *Id.* at 475-77.

Following the guidance provided by *Thunderbird*, we conclude that the ordinance is not preempted by ORS 90.427 (2017), because the operation of the ordinance does not make it impossible to comply with that statute.[8] The

---

[8] For reference, the provision challenged by plaintiffs under ORS 90.427 (2017) provides, in relevant part:

"A Landlord may terminate a Rental Agreement without a cause specified in the Act only by delivering a written notice of termination (the 'Termination Notice') to the Tenant of (a) not less than 90 days before the termination date designated in that notice as calculated under the Act; or (b) the time period designated in the Rental Agreement, whichever is longer. Not less than 45 days prior to the termination date provided in the

less-generous notice requirements in ORS 90.427 (2017) for a no-cause termination, which are stated as minimum notice periods, can still be complied with while complying with the ordinance requirements of a 90-day notice and payment of relocation assistance. *See* ORS 90.427(3)(b) (2017) (permitting termination of a month-to-month tenancy, during the first year of occupancy, by written notice of "not less than 30 days"); ORS 90.427(3)(c)[9] (permitting termination of a month-to-month tenancy, after the first year of occupancy, by written notice of "not less than 60 days"); ORS 90.427(4) (2017)[10] (permitting termination of a fixed-term tenancy of

---

Termination Notice, a Landlord shall pay to the Tenant, as relocation assistance, a payment ('Relocation Assistance') ***. *** For purposes of this Subsection, a Landlord that declines to renew or replace an expiring fixed-term lease on substantially the same terms except for the amount of Rent or Associated Housing Costs terminates the Rental Agreement and is subject to the provisions of this Subsection."

PCC 30.01.085(B) (2017).

[9]  ORS 90.427(3)(c) (2017) was repealed by Or Laws 2019, ch 1, § 1, and replaced with text that provides:

"(c) Except as provided in subsection (8) of this section, at any time after the first year of occupancy, the landlord may terminate the tenancy only:

"(A) For a tenant cause and with notice in writing as specified in ORS 86.782 (6)(c), 90.380 (5), 90.392, 90.394, 90.396, 90.398, 90.405, 90.440 or 90.445; or

"(B) For a qualifying landlord reason for termination and with notice in writing as described in subsections (5) and (6) of this section."

ORS 90.427(3)(c).

[10]  ORS 90.427(4) (2017) was repealed by Or Laws 2019, ch 1, § 1, and replaced with text that provides:

"(4) If the tenancy is a fixed term tenancy:

"(a) The landlord may terminate the tenancy during the fixed term only for cause and with notice as described in ORS 86.782 (6)(c), 90.380 (5), 90.392, 90.394, 90.396, 90.398, 90.405, 90.440 or 90.445.

"(b) If the specified ending date for the fixed term falls within the first year of occupancy, the landlord may terminate the tenancy without cause by giving the tenant notice in writing not less than 30 days prior to the specified ending date for the fixed term, or 30 days prior to the date designated in the notice for the termination of the tenancy, whichever is later.

"(c) Except as provided by subsection (8) of this section, if the specified ending date for the fixed term falls after the first year of occupancy, the fixed term tenancy becomes a month-to-month tenancy upon the expiration of the fixed term, unless:

"(A) The landlord and tenant agree to a new fixed term tenancy;

"(B) The tenant gives notice in writing not less than 30 days prior to the specified ending date for the fixed term or the date designated in the notice for the termination of the tenancy, whichever is later; or

at least one year that by its terms subsequently becomes a month-to-month tenancy, during the fixed term by written notice "not less than 30 days," and during the month-to-month tenancy, by written notice "not less than 60 days"). In addition, nothing in the ordinance purports to prevent a landlord from asserting rights to possession under ORS 90.427(7) (2017), or to grant a right to a tenant to hold over occupancy for a landlord's failure to comply with the ordinance. Rather, the ordinance provides a tenant only with a cause of action if the landlord fails to comply. *See* PCC 30.01.085(D) (2017).[11] Thus, the ordinance is not "in truth incompatible" with ORS 90.427 (2017), as required by *La Grande/Astoria*, 281 Or at 148, for preemption. *See also, e.g.*, *Gunderson, LLC*, 352 Or at 659 ("[H]ome-rule municipalities possess authority to enact substantive policies, even in areas also regulated by state law, so long as the local enactment is not 'incompatible' with state law."); *State ex rel Haley v. City of Troutdale*, 281 Or 203, 211, 576 P2d 1238 (1978) ("We are reluctant to assume that the legislature meant to confine the protection of Oregon residents exclusively to construction standards which it described as 'basic' *** and to place these beyond the power of local communities to provide additional safeguards for themselves. Certainly that intention is not unambiguously expressed.").

Plaintiffs and *amicus* Oregon Association of Realtors urge us not to follow *Thunderbird* in this case, arguing that *Thunderbird* does not control or was wrongly decided, because it did not consider the balance struck in the ORLTA, which they assert included granting rights to landlords, as well as imposing obligations. We do not "lightly overrule" our case law, and we do not agree that *Thunderbird*

---

"(C) The landlord has a qualifying reason for termination and gives notice as specified in subsections (5) to (7) of this section."

ORS 90.427(4).

[11] PCC 30.01.085(D) (2017) provides:

"A Landlord that fails to comply with any of the requirements set forth in this Section 30.01.085 shall be liable to the Tenant for an amount up to three months Rent as well as actual damages, Relocation Assistance, reasonable attorney fees and costs (collectively, 'Damages'). Any Tenant claiming to be aggrieved by a Landlord's noncompliance with the foregoing has a cause of action in any court of competent jurisdiction for Damages and such other remedies as may be appropriate."

is "plainly wrong," such that we would overrule it, in light of its adherence to the preemption analysis set out in *La Grande/Astoria* and subsequent cases. *State v. Civil*, 283 Or App 395, 416, 388 P3d 1185 (2017) (explaining that we do not "lightly overrule our precedents, including those construing statutes" and adhere to the "plainly wrong" requirement to do so).

We also conclude that *Thunderbird* is applicable here, because it rejected a functionally indistinguishable preemption argument under the ORLTA that plaintiffs advance here. Given that the text of ORS 90.427 (2017) uses express terms of minimum requirements, and not maximum requirements, to effect a no-cause termination of a tenancy, we conclude, as we did in *Thunderbird*, that the ordinance and the statute are compatible. *See, e.g.*, *La Grande/Astoria*, 281 Or at 148-49 ("It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by statewide law unless that intention is apparent."). Accordingly, we conclude that the ordinance is not preempted by ORS 90.427 (2017).

We next address plaintiffs' third argument that the ordinance is facially invalid with respect to rental agreements in existence at the time of its passage, as an impairment on the obligation of contracts, in violation of Article I, section 21.[12] That provision was adopted in 1857, and Oregon courts interpret it "as being consistent with the United States Supreme Court's interpretation of the federal Contract Clause in 1857." *Moro v. State*, 357 Or 167, 192, 351 P3d 1 (2015). In 1857, the Contract Clause of the United States Constitution "protected only those obligations arising from contracts that were formed *before* the effective date of the law challenged." *Id.* (emphasis in original). The analysis as to those contracts focuses "on the following questions: (1) is there a contract?; (2) if so, what are its terms?; (3) what obligations do those terms require?; and (4) has the state impaired an obligation of that contract?" *Id.* at 194 (citing

---

[12] Article I, section 21, provides, in part, that "[n]o *** law impairing the obligation of contracts shall ever be passed."

*Strunk v. PERB*, 338 Or 145, 170, 108 P3d 1058 (2005)). We "answer those questions by applying general rules of contract law." *Id*.

Here, plaintiffs have not identified contractual terms that are obligations impaired by the ordinance. Plaintiffs baldly assert that the ordinance is facially invalid because it imposes *new* obligations under existing contracts. That, however, is not what Article I, section 21, prohibits. *See Eckles v. State of Oregon*, 306 Or 380, 395-96, 760 P2d 846 (1988) (explaining that the United States Supreme Court distinguishes between the impairment of a contract, which may occur whenever a law enlarges, abridges, or changes the agreement, and the impairment of the obligation of a contract). Plaintiffs make only generalized arguments, untethered to any particular contract or contractual term, and do not point to any obligation of a contract that has been impaired by the ordinance. We thus reject plaintiffs' challenge under Article I, section 21.

Finally, we turn to plaintiffs' argument that the ordinance is invalid, because "it impermissibly enlarges common law and statutory duties and liabilities by purporting to allow a tenant to sue civilly in state court to enforce rights that exist only under the [o]rdinance." Plaintiffs acknowledge that their challenge cannot survive under *Sims*, 165 Or App at 189, 193, in which we held that a municipal government "can enlarge the common-law duties and liabilities of private parties" and that "it is within the judicial power of the circuit court to adjudicate a private dispute that arises under Oregon municipal law." Plaintiffs contend that *Sims* was wrongly decided but have not provided any basis for us to overrule that decision. *See Civil*, 283 Or App at 416 (setting out criteria for overruling precedent). Thus, we adhere to that case and reject plaintiffs' argument.

Accordingly, we conclude that the trial court did not err in granting the city's motion for summary judgment and denying plaintiffs' motion for summary judgment. However, the trial court's entry of a general judgment that dismissed plaintiffs' case was not the proper disposition of plaintiffs' declaratory judgment action. We vacate and remand the judgment so that the trial court can issue a judgment

declaring the respective rights of the parties. *See, e.g.*, *Western Radio Services Co.*, 297 Or App at 454 (explaining that the proper disposition in a declaratory judgment action is issuance of a declaration as to the rights of the parties).

Vacated and remanded.