554 April 9, 2025 No. 313

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

21+ TOBACCO AND VAPOR RETAIL ASSOCIATION
OF OREGON,
a domestic non-profit corporation;
No Moke Daddy, LLC,
a domestic limited liability company,
doing business as Division Vapor;
and Paul Bates, and individual,
*Plaintiffs-Appellants,*

*v.*

MULTNOMAH COUNTY,
a political subdivision of the State of Oregon,
*Defendant-Respondent.*
Multnomah County Circuit Court
23CV03801; A182442

Benjamin N. Souede, Judge.

Argued and submitted March 10, 2025.

Tony L. Aiello, Jr., argued the cause for appellants. Also on the briefs was Tyler Smith & Associates, P.C.

Andrew T. Weiner argued the cause for respondent. Also on the brief was Jenny M. Madkour.

Steven C. Berman, Lydia Anderson-Dana and Stoll Stoll Berne Lokting & Shlachter P.C.; Dennis A. Henigan and Connor Fuchs filed the brief amici curiae for African American Tobacco Control Leadership Council, American Cancer Society Cancer Action Network, American Heart Association, American Lung Association, American Medical Association, Americans for Nonsmokers' Rights, Campaign for Tobacco-Free Kids, Cascade AIDS Project, Coalition of Communities of Color, Kaiser Permanente, National LGBTQI+ Cancer Network, Oregon Medical Association, Oregon Thoracic Society, Parents Against Vaping e-cigarettes, The Center for Black Health and Equity, Truth Initiative, and Upstream Public Health.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Vacated and remanded for entry of judgment declaring the rights of the parties.

**TOOKEY, P. J.**

In this case concerning the authority of defendant Multnomah County to regulate the sale of tobacco products under Senate Bill (SB) 587 (2021), which is codified at ORS 431A.190 to 431A.220, plaintiffs appeal a general judgment dismissing plaintiffs' complaint entered after defendant's motion to dismiss and plaintiffs' response to that motion. The trial court treated the motion to dismiss and the response as the functional equivalent of cross-motions for summary judgment under ORCP 47 and granted defendant's motion.

On appeal, in three assignments of error, plaintiffs assert that the trial court erred by granting summary judgment in defendant's favor. Plaintiffs argue that the court erred by granting the motion based on its conclusions (1) that "SB 587 does not expressly or impliedly preempt" defendant's local tobacco retail licensure (TRL) program; (2) that "SB 587 does not expressly or impliedly preempt" Multnomah County Ordinance (MCO) 1311, which prohibits the sale of Flavored Tobacco Products[1]; and (3) that "MCO-1311 is constitutional under Article VI, section 10 of the Oregon State Constitution."

We reject defendant's first and third assignments of error for the reasons below. We reject defendant's second assignment of error for the reasons expressed in *Schwartz v. Washington County*, 332 Or App 342, 550 P3d 20 (2024), *rev allowed*, 373 Or 212 (2025) (concluding that a Washington County ordinance prohibiting the sale of flavored tobacco and flavored synthetic nicotine products was not preempted by SB 587).[2] *See also Thorin Properties Limited Partnership v. City of Eugene*, 334 Or App 570, 575, 557 P3d 531 (2024)

---

[1] MCO 1311 defines "Flavored Tobacco Product" as:

"Tobacco product with a distinguishable or distinctive natural or artificial taste, flavor, smell or aroma, other than tobacco, that emanates from or is imparted by a tobacco product, a component of a tobacco product, or a tobacco product's smoke or vapor at any time prior to or during consumption. Flavored tobacco products include (but are not limited to) those tobacco products with a mint, menthol, wintergreen, fruit, candy, honey, cocoa, chocolate, herb, spice, vanilla, liquor, and any and all other distinguishable or distinctive natural or artificial tastes, flavors, smells, or aromas, other than tobacco."

[2] After oral argument in this case, plaintiffs filed a memorandum of additional authorities asserting two reasons why, in their view, *Schwartz*, which is currently under review by the Supreme Court, is plainly wrong.

(explaining that "we have consistently determined that a local ordinance may impose greater restrictions or requirements than a state statute without being preempted by it").[3]

But because this was a declaratory judgment action, the trial court should have entered a judgment declaring the rights of the parties instead of dismissing plaintiffs' claims. *City of Corvallis v. State*, 304 Or App 171, 190-91, 464 P3d

---

First, plaintiffs point to our statement in *Schwartz* that we understood the prohibition on the sale of flavored tobacco and flavored synthetic nicotine products at issue in that case to "largely amount to a restriction on certain ingredients,"332 Or App at 357, and contend that that interpretation "introduces federal preemption." Having considered that argument, we conclude that *Schwartz* is not plainly wrong. *See State v. Civil*, 283 Or App 395, 417, 388 P3d 1185 (2017) (explaining our standard for overruling precedent is that the decision must be "plainly wrong," which is a "rigorous standard, satisfied only in exceptional circumstances"). It suffices to note that it does not appear to us that federal law preempts a locality from prohibiting the sale of flavored tobacco products. Prohibiting the sale of a particular type of product—even if that prohibition can be understood to "largely amount" to a restriction on selling a product made with certain ingredients—is ultimately a prohibition on the sale of a particular type of product. *See R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F4th 542, 555 (9th Cir 2022) (flavored tobacco ban not preempted in part because "Congress has allowed the federal government to set the standards regarding how a product would be manufactured and marketed, but has left states, localities, and tribal entities the ability to restrict or opt out of that market altogether"); *id.* at 558 (concluding "requirement that tobacco retailers or licensees throughout the County not sell flavored tobacco products" fits within "the savings clause" of the Family Smoking Prevention and Tobacco Control Act because it was "'a 'requirement[] relating to the sale *** of[] tobacco products [to] individuals of any age" (brackets and omission in *R. J. Reynolds*).

Second, as we understand it, plaintiffs contend that *Schwartz* is plainly wrong because the opinion "minimizes state licensure" insofar as it concluded "Oregon's scheme for TRL can operate concurrently with" the ordinance prohibiting the sale of flavored tobacco and flavored synthetic nicotine products that was at issue in that case. Again, having considered plaintiffs' argument, we conclude that under *Civil* our analysis in *Schwartz* was not plainly wrong. *See Schwartz*, 332 Or App at 358-61 (analyzing whether the prohibition on sale of flavored tobacco could operate concurrently with Oregon's scheme for TRL).

[3] We note that *amici curiae* African American Tobacco Control Leadership Council, American Cancer Society Cancer Action Network, American Heart Association, American Lung Association, American Medical Association, Americans for Nonsmokers' Rights, Campaign for Tobacco-Free Kids, Cascade AIDS Project, Coalition of Communities of Color, Kaiser Permanente, National LGBTQI+ Cancer Network, Oregon Medical Association, Oregon Thoracic Society, Parents Against Vaping e-cigarettes, The Center for Black Health and Equity, Truth Initiative, and Upstream Public Health, have filed a brief in support of defendant in which they contend that the "Multnomah County flavor ban ordinance is not preempted" and "the flavor ban ordinance provides Multnomah County residents greater protection against the public health harms of flavored tobacco and nicotine products."

1127 (2020). Consequently, we vacate and remand for entry of a judgment declaring the rights of the parties.

## I.    BACKGROUND

We first provide the necessary statutory and factual background for this case before turning to our analysis.

### A.    *Statutory Background*

In 2021, the Legislative Assembly passed SB 587, which, for the first time, created a statewide scheme for TRL in Oregon. Oregon's scheme for TRL is codified at ORS 431A.190 to 431A.220 and is discussed in more detail in *Schwartz*, 332 Or App at 344-52. The purpose Oregon's scheme for TRL is to "improve enforcement of local ordinances and rules, state laws and rules and federal laws and regulations that govern the retail sale of tobacco products and inhalant delivery systems." ORS 431A.192.

Central to Oregon's TRL scheme is ORS 431A.194, which prohibits the retail sale of tobacco products or inhalant delivery systems from any premises that is not licensed or authorized to make such sales under *either* ORS 431A.220 *or* ORS 431A.198.[4] As described further below, the former of those two statutes, ORS 431A.220 provides, in certain circumstances, for licenses or authorizations to sell tobacco products or inhalant delivery systems issued by cities or local public health authorities (*e.g.*, the governing body of counties, such as Multnomah County).[5] The latter statute, ORS 431A.198, provides for licenses issued by the Department of Revenue (DOR). As explained in *Schwartz*, under Oregon's scheme for TRL, "a retailer is required to be licensed or authorized to sell tobacco products and inhalant delivery systems by a political subdivision that had a licensure or authorization system in place prior to January 1, 2021, [under ORS

---

[4]  ORS 431A.194 provides:

"A person may not make a retail sale of a tobacco product or an inhalant delivery system at or from a premises located in this state unless the person sells the tobacco product or inhalant delivery system at or from a premises licensed or otherwise authorized under ORS 431A.198 or 431A.220."

[5]  ORS 431A.218(1)(a) defines "governing body of a local public health authority" with reference to ORS 431.003, which defines it to mean, among other things, the "governing body of a county."

431A.220,] or by the state[, under ORS 431A.198], but not by both." *Schwartz*, 332 Or App at 349.

Additionally, regardless of the entity from which a retailer obtains a license or authorization to sell tobacco products or inhalant delivery systems, ORS 431A.218(2)(a) authorizes political subdivisions to enact "standards" for the sale of tobacco products.

ORS 431A.220, ORS 431A.198, and ORS 431A.218(2)(a) are each pertinent to our analysis in this case; we describe them each in turn.

1.   *Local TRL Programs Under ORS 431A.220.*

As noted, SB 587 created a statewide licensure program, but prior to the enactment of SB 587, several political subdivisions in Oregon, including defendant, had adopted ordinances requiring retailers to hold a license or other authorization issued by the political subdivision in order to sell tobacco products; that is, they had local TRL programs. *See, e.g.*, Testimony, Senate Committee on Health Care, SB 587, Feb 17, 2021 (statement of Rachel Banks) (noting that "[c]ounties such as Multnomah, Clatsop and Klamath are enforcing strong tobacco retail licenses").

During the discussions on SB 587, an issue arose in the legislature "regarding what to do about the TRL programs in those political subdivisions that already had their own TRL programs if the state was to begin issuing its own licenses for retail sales under SB 587." *Schwartz*, 332 Or App at 346. The legislature "did not want to 'preempt[]' those existing local programs." *Id.* at 347 (quoting Audio Recording, Senate Committee on Health Care, SB 587, Mar 10, 2021, at 00:45:00 (comments of Sen. Tim Knopp), https://olis.oregonlegislature.gov (accessed Mar 13, 2024)).

The result of those discussions was the "continuity" provision in ORS 431A.220, under which political subdivisions that had ordinances that were in effect on or before January 1, 2021, requiring retailers to hold a license or other authorization issued by the political subdivision in order to sell tobacco products or inhalant delivery systems,

were, at least in certain circumstances, permitted to continue enforcement of those ordinances after passage of SB 587.

ORS 431A.220 provides:

"A city or local public health authority that, on or before January 1, 2021, and pursuant to an ordinance adopted by the governing body of the city or local public health authority, enforced standards described in ORS 431A.218(2)(a) and required that a person that makes retail sales of tobacco products or inhalant delivery systems in an area subject to the jurisdiction of the city or local public health authority hold a license or other authorization issued by the city or local public health authority may continue to enforce the standards and require the license or other authorization on and after January 1, 2022."

As SB 587 worked its way through the legislative process, it received support from various groups that expressed their support because SB 587 was largely understood not to prevent political subdivisions which had enacted local TRL on or before January 1, 2021, from continuing to run those programs.

For example, a statement from the Oregon Coalition of Local Health Officials and County Commissioners— signed by the chair of the Benton County Commission, the Clackamas County Commission, the Klamath County Commission, the Lane County Commission, the Multnomah County Commission, and the Washington County Commission, and two Deschutes County Commissioners— expressed support for SB 587 because it "allows local jurisdictions to maintain their local tobacco retail license program." Testimony, Senate Committee on Health Care, SB 587, Mar 1, 2021 (statement of Oregon Coalition of Local Health Officials and County Commissioners). A statement from the Associate Government Relations Director of the Oregon Medical Association in support of SB 587 noted that "[m]any local jurisdictions have already taken the initiative to create a license in Oregon and this bill would allow those programs to be grandfathered in." Testimony, Senate Committee on Health Care, SB 587, Mar 1, 2021 (statement of Ivy Jones, Associate Government Relations

Director, Oregon Medical Association). A statement from the Northwest Grocery Association in support of SB 587 explained that "[t]he bill allows Counties to continue their [TRL] programs." Testimony, Senate Committee on Health Care, SB 587, Mar 1, 2021 (statement of Shawn Miller, Northwest Grocery Association).[6]

That view of the legislation—that it did not pre-empt the local TRL programs that were already in effect—is also reflected in statements concerning SB 587 made by legislators. Audio Recording, Senate Committee on Health Care, SB 587, March 17, 2021, at 2:05:25 (comments of Sen Kathleen Taylor) ("Senator Knopp identified a solution that would allow local licenses to continue[.] * * *. These changes include allowing a local jurisdiction's license to meet the licensure requirement in the bill * * *[,] and preventing additional local licenses from being enacted once the bill goes into effect."); Audio Recording, Senate Committee on Health Care, SB 587, March 10, 2021, at 00:45:00 (comments of Sen Tim Knopp) (explaining that, prior to SB 587, some of the local TRL programs may "have gone even a little further than" the state TRL scheme likely would and recognizing that some of the political subdivisions with existing TRL programs "would want to keep those [TRL programs] in place").

## 2.   *DOR TRL Under ORS 431A.198.*

Under Oregon's TRL scheme, if a political subdivision did not have a local TRL program in place that was permitted to continue under ORS 431A.220, or chooses to discontinue the TRL program, licenses for tobacco retailers are issued by the DOR under ORS 431A.198.

ORS 431A.198 requires the DOR to issue a license when certain circumstances are met, including that the premises at which tobacco products or inhalant delivery systems will be sold is "fixed and permanent" and is not

---

[6] *See also, e.g.*, Testimony, Senate Committee on Health Care, SB 587, Feb 16, 2021 (statement of Jessica Guernsey, Public Health Director, Multnomah County Health Department) (describing Multnomah County's TRL program and noting support for SB 587 in view of "the thoughtful and thorough legislation in SB 587 for local public health authorities who have adopted tobacco retail licensing programs").

in "an area that is zoned exclusively for residential use." ORS 431A.198 also provides that the DOR cannot require a retailer to have a DOR-issued license to sell tobacco products or inhalant delivery systems when the retailer has a license or other authorization issued by a city or local public health authority pursuant to ORS 431A.220.

ORS 431A.198 provides in relevant part:

"(1)   Except as provided in subsection (8) of this section, the Department of Revenue shall issue licenses to, and annually renew licenses for, a person that makes retail sales of tobacco products or inhalant delivery systems at qualified premises.

"(2)   To be qualified for licensure under this section, a premises:

"(a)   Must be a premises that is fixed and permanent;

"(b)   May not be located in an area that is zoned exclusively for residential use; and

"(c)   Must meet any qualification for engaging in the retail sale of tobacco products and inhalant delivery systems enacted as an ordinance by the governing body of a local public health authority under ORS 431A.218, provided that the department has knowledge of the qualification pursuant to an agreement entered into under ORS 431A.212.

"* * * * *

"(8)   The department may not require a person that makes retail sales of tobacco products or inhalant delivery systems to obtain a license under this section if the person holds a license or other authorization issued by a city or local public health authority pursuant to ORS 431A.220."

3.   *Local Standards Under ORS 431A.218(2)(a).*

In addition to preserving preexisting local TRL programs in certain circumstances and providing for DOR-issued licenses, in defining the respective roles and responsibilities of the state and its political subdivisions, "Oregon's scheme for TRL contains a provision expressly allowing the 'governing body of a local public health authority' to enforce 'standards for regulating the retail sale of tobacco products

and inhalant delivery systems' in addition to those imposed by state law." *Schwartz*, 332 Or App at 349 (quoting ORS 431A.218(2)).

Specifically, ORS 431A.218(2) provides:

"Each local public health authority may:

"(a)　Enforce, pursuant to an ordinance enacted by the governing body of the local public health authority, standards for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety in addition to the standards described in paragraph (b) of this subsection, including qualifications for engaging in the retail sale of tobacco products or inhalant delivery systems that are in addition to the qualifications described in ORS 431A.198;

"(b)(A)　Administer and enforce standards established by state law or rule relating to the regulation of the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety if the local public health authority and the Oregon Health Authority enter into an agreement pursuant to ORS 190.110[.]"

In *Schwartz*, we concluded that a Washington County ordinance prohibiting the sale of flavored tobacco products—similar to the ordinance at issue in defendant's second assignment of error—was a "standard for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety," and accordingly was not preempted by SB 587. 332 Or App at 356-57. That is, we concluded that Washington County was authorized to adopt an ordinance prohibiting the sale of flavored tobacco products under ORS 431A.218(2).[7] *Id.* at 357.

B.　*Factual Background and Procedural History*

With that statutory background, we turn to the facts and procedural history underlying this appeal.

Plaintiffs are small businesses and small business owners, as well as a non-profit organization that they

---

[7] We note that Washington County was authorized to do so under ORS 431A.218(2) even though it did not have a preexisting local TRL program in place under the "continuity" provision of ORS 431A.220.

formed to "protect their lawful and licensed activity of selling tobacco products, including flavored tobacco products, to adults 21 years of age or older."

Defendant Multnomah County is a political subdivision with a "home rule" charter providing it authority "over matters of county concern to the fullest extent granted or allowed by the constitutions and laws of the United States and the State of Oregon."

Since 2015, defendant has operated countywide TRL program (the Multnomah Licensure Program), and it requires tobacco retailers in Multnomah County to hold a tobacco retail license. But on January 1, 2021—the date by which a TRL program must have existed to continue in effect after passage of SB 587—the Multnomah Licensure Program did not require that tobacco retailers have a location that is "fixed and permanent" and not be in "an area that is zoned exclusively for residential use," which, as noted, are requirements that are imposed under ORS 431A.198 for a retailer to obtain a DOR-issued license.

On December 15, 2022, defendant adopted MCO 1311, which prohibits the sale of Flavored Tobacco Products in Multnomah County.

After the adoption of MCO 1311, plaintiffs brought suit against defendant, asserting two claims for declaratory judgment under ORS 28.020. Plaintiffs' first claim asserted that (1) MCO 1311 was either expressly or impliedly preempted by SB 587, and (2) MCO 1311 was invalid, because it violates Article VI, section 10, of the Oregon Constitution, which provides that "[a] county charter may provide for the exercise by the county of authority over matters of county concern." Plaintiffs' second claim asserted that the Multnomah Licensure Program was either expressly or impliedly preempted by SB 587.

The parties agreed that there were no material facts in dispute. And on what the trial court treated as cross-motions for summary judgment, it denied relief on both of plaintiffs' claims, granted judgment in favor of defendant, and dismissed plaintiffs' claims. This appeal followed.

## II.  THE PRESENT APPEAL

We review the trial court's rulings on "cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law." *Owen v. City of Portland*, 305 Or App 267, 272, 470 P3d 390 (2020), *aff'd,* 368 Or 661, 470 P3d 390 (2021).

A.  *Plaintiffs' First Assignment of Error.*

In plaintiffs' first assignment of error, they assert that the Multnomah Licensure Program was expressly or impliedly preempted when SB 587 was enacted.

"The analytical process for determining whether state law preempts a local law in Oregon is well established." *Owen v. City of Portland*, 368 Or 661, 667, 497 P3d 1216 (2021). The question is whether "a local law is 'incompatible' with state law, 'either [1] because both cannot operate concurrently or [2] because the legislature meant its law to be exclusive.'" *Id.* (quoting *La Grande/Astoria v. PERB*, 281 Or 137, 148, 576 P2d 1204, *aff'd on reh'g*, 284 Or 173, 586 P2d 765 (1978)). Plaintiffs contend that the Multnomah Licensure Program is preempted for both reasons.

Regarding express preemption, plaintiffs note that, prior to January 1, 2021, the Multnomah Licensure Program did not require that tobacco retailers have a location that is "fixed and permanent" and not be in "an area that is zoned exclusively for residential use." As plaintiffs see it, those two requirements—which are found in ORS 431A.198—are necessary for a local TRL program that was in existence on January 1, 2021, to be covered by the "continuity" provision, ORS 431A.220. Plaintiffs so see it because ORS 431A.220 authorizes local public health authorities to continue TRL programs that "enforced standards described in ORS 431A.218(2)(a)," and ORS 431A.218(2)(a), in turn, references "standards ***, including qualifications for engaging in the retail sale of tobacco products or inhalant delivery systems that are in addition to the qualifications described in ORS 431A.198."

Regarding implied preemption, plaintiffs assert that the Multnomah Licensure Program is impliedly

preempted by SB 587, because the Multnomah Licensure Program "is less strict than the state's licensure qualifications" and, therefore, it is "in conflict with the same."

Regarding plaintiffs' arguments concerning express preemption, defendant responds that SB 587 actually "evinces legislative intent for the opposite conclusion"—*i.e.*, that the Multnomah Licensure Program is not preempted. As defendant sees it, "the standards and qualifications for state licensure" in ORS 431A.198 "were not enacted until June 26, 2021, nearly six months after the January 1, 2021, cutoff date."[8] And "based on the timing alone, the only reasonable interpretation is that the legislature intended to allow those programs already in place to continue even if they utilized different licensing requirements" than those set forth in ORS 431A.198. Further, defendant asserts that if "there is ambiguity in the meaning of the statutory text, that alone would prevent plaintiffs from being able to prevail on their preemption argument."

Regarding plaintiffs' arguments concerning implied preemption, defendant responds that "the state and county licensure programs do not conflict because retailers licensed under the [Multnomah] Licensure Program cannot be required to obtain a state license." That is, there "is no incompatibility."

1.  *Express Preemption*

We first consider express preemption—*viz.*, whether the "legislature meant its law to be exclusive." *Owen*, 368 Or at 668. That "boils down to whether the legislature 'unambiguously expressed its intent' to preempt laws like" the Multnomah Licensure Program. *Id.* That is because "we assume legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent." *Rogue Valley Sewer Services v. City of Phoenix*, 357 Or 437, 450, 353 P3d 581 (2015) (internal quotation marks omitted). As is the case in other contexts, "we ascertain the intentions of the legislature by examining the text of the statute in its context,

___

[8] We note that SB 587 was signed by the Senate President and the Speaker of the House of Representatives on June 26, 2021. It was signed by the Governor on July 19, 2021.

along with any relevant legislative history, and, if necessary, relevant canons of statutory construction." *Schwartz*, 332 Or App at 355.

As quoted above, ORS 431A.220 provides:

"A city or local public health authority that, on or before January 1, 2021, and pursuant to an ordinance adopted by the governing body of the city or local public health authority, enforced standards described in ORS 431A.218(2) (a) and required that a person that makes retail sales of tobacco products or inhalant delivery systems in an area subject to the jurisdiction of the city or local public health authority hold a license or other authorization issued by the city or local public health authority may continue to enforce the standards and require the license or other authorization on and after January 1, 2022."

As a textual matter, we understand ORS 431A.220 to contain two prerequisites for a city or local public health authority to continue its TRL program after January 1, 2022. First, prior to January 1, 2021, it must have "enforced standards described in ORS 431A.218(2)(a)." Second, it must require that "a person that makes retail sales of tobacco products or inhalant delivery systems in an area subject to the jurisdiction of the city or local public health authority hold a license or other authorization issued by the city or local public health authority."

There is no dispute that the second prerequisite is met in this case; thus, the parties' arguments turn on the first prerequisite. The legal question is the meaning of the phrase in ORS 431A.220, "enforced standards described in ORS 431A.218(2)(a)." As framed by the parties' arguments, if that phrase includes the qualifications for DOR-issued licenses set forth in ORS 431A.198(2)—*i.e.*, that the premises at which tobacco will be sold is "fixed and permanent" and is not "located in an area that is zoned exclusively for residential use"—plaintiffs prevail; if not, defendant prevails.

As set out below, we conclude that the phrase "enforced standards described in ORS 431A.218(2)(a)" in ORS 431A.220 does not include the standards for DOR-issued licenses set forth in ORS 431A.198(2).

As quoted above, ORS 431A.218(2)(a) provides local public health authorities the authority to

"[e]nforce, pursuant to an ordinance enacted by the governing body of the local public health authority, standards for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety in addition to the standards described in paragraph (b) of this subsection, including qualifications for engaging in the retail sale of tobacco products or inhalant delivery systems that are in addition to the qualifications described in ORS 431A.198."

Thus, ORS 431A.218(2)(a) describes a certain type of standards—standards "for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety" that a governing body of a local health authority may enforce pursuant to an ordinance. The text of ORS 431A.218(2)(a) also indicates that those standards are "in addition to the standards described in paragraph (b)"—which authorizes a local public health authority to administer and enforce standards "established by state law or rule relating to the regulation of the retail sale of tobacco products and inhalant delivery systems"—and include qualifications for engaging in the retail sale of tobacco products or inhalant delivery systems that are "in addition to the qualifications described in ORS 431A.198."

A plausible interpretation of that text, read in conjunction with the text of ORS 431A.220—and the interpretation that we conclude that the legislature intended—is that ORS 431A.218(2)(a) empowers local public health authorities to adopt by ordinance "standards for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety" that go *beyond*—*i.e.*, are "in addition to"—those set forth in ORS 431A.198, but not to also require local public health authorities that had TRL programs prior to SB 587 to have adopted the standards that are set forth in ORS 431A.198 prior to January 1, 2021, for those TRL programs to continue.

We note that although at first blush plaintiffs' reading of ORS 431A.220 has some textual appeal because of the word of "including" in ORS 431A.218(2)(a), we conclude our

interpretation noted above is the only interpretation that is supported by context, namely, ORS 431A.198 itself and legislative history. The text of ORS 431A.198 evinces a legislative intent that the standards set forth in ORS 431A.198(2) are *applicable only* to tobacco retail licenses issued by the DOR under that section, and not to licenses or other authorizations issued by a local public health authority under ORS 431A.220. As noted, ORS 431A.198(2) provides:

> "To be qualified for licensure *under this section*, a premises:
>
> "(a)   Must be a premises that is fixed and permanent;
>
> "(b)   May not be located in an area that is zoned exclusively for residential use[.]"

(Emphasis added.) Under plaintiffs' reading of ORS 431A.220 and ORS 431A.218(2)(a), to be qualified for licensure under *either* ORS 431A.198 *or* ORS 431A.220, a tobacco retailer would need to "be a premises that is fixed and permanent" and "not be located in an area that is zoned exclusively for residential use," because ORS 431A.220 would require a local public health authority to have also enforced the standards set forth in ORS 431A.198(2). But that would render the phrase "under this section" in ORS 431A.198(2) both meaningless surplusage, *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage."), and legally incorrect, as the requirements in ORS 431A.198(2) would apply to both licenses issued under ORS 431A.198 as well as licenses issued under ORS 431A.220.

To be sure, under ORS 431A.218(2)(b), a local public health authority can, in certain circumstances, enforce "standards established by state law," including those in ORS 431A.198, but we do not think that ORS 431A.220 requires local public health authorities to adopt those same standards by ordinance by virtue of the cross reference in ORS 431A.218(2)(a) to ORS 431A.198.

Moreover, we observe that ORS 431A.220 specifically references only the "standards described in ORS 431A.218(2)(a)" and, as noted, ORS 431A.218(2)(a)

specifically describes certain standards—*i.e.*, "standards for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety." Plaintiffs' reading would, in effect, insert "and ORS 431A.198(2)" into ORS 431A.220. That is not a permissible construction of ORS 431A.220. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]").

Instead, we think that, had the legislature intended for licenses authorized under the "continuity" provision of SB 528, ORS 431A.220, to be required to include the standards set forth in ORS 431A.198, it would have said so.

The legislative history of SB 528, as set forth above, supports our understanding that ORS 431A.220 was not intended to require local public health authorities who ran TRL programs prior to the enactment of SB 587 to have adopted the standards set forth in ORS 431A.198(2)(a) and (b) on or before January 1, 2021, to continue to run those programs, as plaintiffs contend. As noted, as it worked its way through the legislature, various groups, including counties such as Multnomah County, expressed their support for SB 587 in part because it was understood not to prevent political subdivisions who had enacted local TRL programs (such as Multnomah County) from continuing to run those programs. And that understanding was also reflected in statements concerning SB 587 made by legislators.

Nowhere in those discussions concerning SB 587 did anyone state that the "continuity" provision of that bill—section 18, which is now codified at ORS 431A.220—rather than allowing existing countywide TRL programs to continue after the enactment of SB 587, was intended to require the termination of countywide programs if those programs did not allow tobacco sales only from a "premises that is fixed and permanent" and not "located in an area that is zoned exclusively for residential use." If that was the legislature's intent, as plaintiffs contend, one would expect some mention of that intent in the legislative history, particularly because it is undisputed that none of the counties with preexisting

TRL programs when SB 587 was enacted—including counties which expressed support for SB 587 in part because, in their view, it would allow them to continue their TRL programs—required both that tobacco sales be made only from a "premises that is fixed and permanent" and not "located in an area that is zoned exclusively for residential use." *See Nancy Doty, Inc. v. WildCat Haven, Inc.*, 297 Or App 95, 114, 439 P3d 1018, *rev den*, 365 Or 556 (2019) ("although we are cautious about inferring too much from silence," placing "some weight" on the lack of "a single mention" of a particular Court of Appeals case in the legislative history in the context of determining whether the legislative intent was to overturn that case).[9]

In view of the foregoing, we conclude that the legislature did not "unambiguously express" its intent to preempt preexisting local TRL programs, such as the Multnomah Licensure Program, when it enacted SB 587. To the contrary, we read ORS 431A.220 and the accompanying statutory scheme for TRL in Oregon to expressly allow for the continuation of such preexisting TRL programs.

## 2. *Implied Preemption*

We turn to whether the Multnomah Licensure Program is impliedly preempted, because it "cannot operate concurrently" with Oregon's scheme for TRL, ORS 431A.190 to 431A.220. We conclude that the Multnomah Licensure Program is not so preempted.

As noted, plaintiffs assert that the Multnomah Licensure Program was impliedly preempted by SB 587, because the Multnomah Licensure Program "is less strict than the state's licensure qualifications" and, therefore, it is "in conflict with the same." More specifically, as plaintiffs see it, "by creating a statewide, state-issued, shall-issue license, the legislature evidenced it intention to preclude [local public health authorities] from enforcing a more permissive licensure."

---

[9] To put a finer point on it, if plaintiffs were correct in their understanding of ORS 431A.220, none of the counties with preexisting TRL programs would be allowed to continue to their programs, because those programs, as of January 1, 2021, did not both require that tobacco sales only be made from a "premises that is fixed and permanent" and not "located in an area that is zoned exclusively for residential use."

As an initial matter, as we have concluded above, the statutory scheme for TRL in Oregon evinces a legislative intent to allow local public health authorities to continue to enforce local TRL schemes in effect on or before January 1, 2021, even if those local TRL schemes do not include the qualifications for licensure that are set forth in ORS 431A.198(2).

But more fundamentally, given the respective roles of the DOR in issuing tobacco retail licenses under ORS 431A.198, and local public health authorities in issuing tobacco retail licenses (or other authorizations) under programs authorized by ORS 431A.220, we perceive no conflict. The state's TRL scheme and the Multnomah Licensure Program can operate concurrently: As we explained in *Schwartz*, and as described above, ORS 431A.190 to 431A.220 provide for a statewide TRL scheme in Oregon "that prohibits the 'retail sale of a tobacco product or an inhalant delivery system at or from a premises located in this state unless the person sells the tobacco product or inhalant delivery system at or from a premises licensed or otherwise authorized under ORS 431A.198 [providing for licenses issued by DOR] or ORS 431A.220 [providing for licenses or other authorization issued by political subdivisions].'" *Schwartz*, 332 Or App at 359 (quoting ORS 431A.194; brackets in *Schwartz*). Under that scheme, a retailer "is required to be licensed or authorized to sell tobacco products and inhalant delivery systems by a political subdivision * * *, or by the state, but not by both." *Id.* at 349. And, if a person holds a license issued by a political subdivision under ORS 431A.220, the DOR is prohibited from requiring the person to also obtain a DOR-issued license. ORS 431A.198(8).

Given that scheme, both the Multnomah Licensure Program, as authorized by ORS 431A.220, and the state's TRL program, can operate concurrently.

B.  *Plaintiffs' Third Assignment of Error*

As noted above, MCO 1311 prohibits the sale of Flavored Tobacco Products in Multnomah County. In plaintiffs' third assignment of error, they assert that MCO 1311 "violates Article VI, section 10, of Oregon's Constitution by

legislating matters of state concern by prohibiting the sale of Tobacco Products, the sale of which is specifically authorized by the state for all licensed individuals whether licensed by the state or by a [Local Public Health Authority].” In plaintiffs' view,

> “by creating a state-wide, state-issued, shall-issue license and requiring adherence to standards and qualifications enacted by the state, the legislature made the regulation of licensed retailers predominately an issue of state, not local, concern as evinced by the specific, limited and permissive role of [local public health authorities] in contrast to the expansive and mandatory role in which the state placed itself.”

As we understand plaintiffs' argument, they contend that MCO 1311 is invalid because defendant exceeded its authority as a home-rule county in adopting it. Plaintiffs rely on *Li v. State*, 338 Or 376, 392, 110 P3d 91 (2005), *abrogated on other grounds by Obergefell v. Hodges*, 576 US 644, 135 S Ct 2584, 192 L Ed 2d 609 (2015), in support of that view. In *Li*, the court concluded that a county lacked authority to adopt a policy of issuing marriage licenses to same-sex couples, because “the state and, more specifically, the legislature, is the locus of power over marriage-related matters in Oregon.” *Id.* at 392. In so concluding, the court reasoned that “Oregon law currently places the regulation of marriage exclusively within the province of the state's legislative power,” and the “the county's involvement in the license-issuing process is ministerial only.” *Id.* at 392, 396.

Defendant responds that plaintiffs' reasoning is flawed. Among other points, defendant argues that the question is not whether the “predominant character” of tobacco regulation is a matter of state or local concern, but whether MCO 1311 is displaced because it is “incompatible” with state policy. Defendant contends it is not incompatible.

In our view, plaintiffs' argument fails, because it starts from an incorrect premise concerning the role of the state, on the one hand, and the role of its political subdivisions, on the other, in regulating the sale of tobacco products and inhalant delivery systems under Oregon's scheme for TRL. In *Schwartz*, we concluded that a Washington County

ordinance prohibiting the sale of flavored tobacco and flavored synthetic nicotine products in Washington County was not preempted by SB 587, but was, in fact, expressly permitted by that legislation because the ordinance was a "standard" within the meaning of ORS 431A.218(2)(a). *Id.* at 356-57. We think it follows from that ruling—*i.e.*, that the legislature expressly authorized local public health authorities to enact "standards" in addition to those standards imposed by state law, and that an ordinance prohibiting the sale of flavored tobacco and flavored synthetic nicotine products is such a "standard"—that the ordinance in this case, which prohibits the sale of Flavored Tobacco Products, does not run afoul of Article VI, section 10, of the Oregon Constitution by "legislating matters of state concern," as plaintiffs contend.

Put another way, contrary to plaintiffs' arguments, under ORS 431A.218(2)(a), enacting standards "for regulating the retail sale of tobacco products and inhalant delivery systems for purposes related to public health and safety" is a matter of local concern. That is, unlike marriages, which were at issue in *Li*, and the regulation of which Oregon law placed "exclusively within the province of the state's legislative power," and "the county's involvement in the license-issuing process is ministerial only," 338 Or at 392, 396, under ORS 431A.218(2)(a), a local public health authority has broad (and discretionary) authority to enact standards regulating the sales of tobacco products in addition those standards created by state law. *See Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or App 457, 478, 228 P3d 650, *rev den,* 348 Or 524 (2010) (a city's ordinances "regulat[ing] plaintiff's land uses in general, and preservation of low-income housing in particular, are well within the city's longstanding delegated authority under state statutes and administrative rules" and thus were not "within the 'locus of power' traditionally and exclusively reserved to the state").

In reaching our conclusion that MCO 1311 does not run afoul of Article VI, section 10, we note, and we reject, one other specific argument that plaintiffs make in support of their third assignment of error. Plaintiffs argue that MCO 1311 violates Article VI, section 10, because it "impact[s]

to whom the DOR may issue a shall-issue license, thereby regulating the conduct of state officials." The difficulty with that argument is that ORS 431A.198(2)(c) expressly makes the DOR's obligation to issue a tobacco retail license subject to "any qualification for engaging in the retail sale of tobacco products and inhalant delivery systems enacted as an ordinance by the governing body of a local public health authority under ORS 431A.218," if the DOR has "knowledge of the qualification pursuant to an agreement entered into under ORS 431A.212." Put plainly, ORS 431A.198(2)(c) expressly contemplates that the DOR has no "shall-issue" obligation to issue a tobacco retail license if a tobacco retailer does meet the qualifications set by a local public health authority if the DOR has knowledge of the qualification in the manner described in ORS 431A.198(2)(c).

## III.  CONCLUSION

In sum, we conclude that the trial court did not err in denying plaintiffs' motion for summary judgment, and in granting judgment in favor of defendant. Defendant was entitled to judgment as a matter of law, because SB 587 did not expressly or impliedly preempt the Multnomah Licensure Program or MCO 1311, and MCO 1311 is not unconstitutional under Article VI, section 10.

Because this was a declaratory judgment action, however, the trial court should have entered a judgment declaring the rights of the parties instead of dismissing plaintiffs' claims. *City of Corvallis*, 304 Or App at 190 ("When a trial court dismisses a declaratory judgment claim after deciding it on the merits, it is our practice to vacate and remand for correction of the judgment, even if we are affirming on the merits."); *see also McPherson v. Coos Bay-N. Bend Water Bd.*, 318 Or App 582, 587, 509 P3d 715, *rev den*, 370 Or 212 (2022) (vacating and remanding and noting that, in a declaratory judgment action, "the trial court's dismissal of plaintiff's declaratory judgment claim was not the proper disposition"). Consequently, we vacate and remand for entry of a judgment declaring the rights of the parties.

Vacated and remanded for entry of judgment declaring the rights of the parties.