No. 112　　　　　February 19, 2026　　　　　245

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE ex rel AMAROK, LLC,
a Delaware limited liability company,
*Plaintiff-Appellant,*

*v.*

CITY OF GRESHAM,
a municipal corporation;
Gresham City Manager Nina Vetter, in official capacity;
Gresham Mayor Travis Stovall, in official capacity;
Gresham City Councilor Dina Dinucci, in official capacity;
Gresham City Councilor Eddy Morales, in official capacity;
Gresham City Councilor Vincent Jones-Dixon, in official
capacity; Gresham City Councilor Jerry Hinton, in official
capacity; Gresham City Councilor Sue Piazza, in official
capacity; and Gresham City Councilor Janine Gladfelter,
in official capacity,
*Defendants-Respondents.*

Multnomah County Circuit Court
23CV24298; A184150

David F. Rees, Judge.

Argued and submitted October 31, 2025.

Justin M. Thorp argued the cause and filed the briefs for appellant.

Joshua P. Soper argued the cause for respondents. Also on the brief was Beery, Elsner & Hammond, LLP.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Vacated and remanded for entry of a judgment declaring the parties' rights.

**JOYCE, J.**

Plaintiff brought this action against defendants, the City of Gresham and several of its agents (the city), challenging the city's enforcement of its ordinance prohibiting the installation of electric fences, including battery-charged fences, outside of industrial land use districts—Gresham Revised Code (GRC) 7.15.040(7)(d). Plaintiff argued that the city's ordinance is preempted by House Bill 4027 (2022), now codified at ORS 195.870, because ORS 195.870(3) explicitly forbids local governments from prohibiting the installation or use of battery-charged fences on "property not zoned or used for residential use." The city argued that GRC 7.15.040(7)(d) is not preempted by ORS 195.870 because the ordinance prohibits only battery-charged fences in zones that permit residential use. The parties brought cross-motions for summary judgment, and the trial court denied plaintiff's motion in its entirety and partially granted the city's motion. Plaintiff appeals from the resulting limited judgment and assigns error to the trial court's holding that ORS 195.870(3) does not preempt the ordinance. We conclude that ORS 195.870(3) does not preempt GRC 7.15.040(7)(d). However, we further conclude that dismissal of plaintiff's declaratory judgment claim was not the proper disposition. Therefore, we vacate and remand the judgment on plaintiff's claim for declaratory judgment for entry of a judgment declaring the parties' rights.

The material facts are undisputed and relatively few. In 2022, the Oregon legislature enacted ORS 195.870(3), which, as relevant here, prohibits local governments from taking certain actions related to battery-charged fences:

"(3)  Except as required by state building code, *a local government \*\*\* may not adopt or enforce any ordinance*, land use regulation or building code *for property not zoned or used for residential use* that:

"(a)  *Prohibits the installation or use of a battery-charged fence*.

"(b)  Imposes installation or operational requirements inconsistent with IEC standards or this section for an alarm system or battery-charged fence.

"(c)   Requires a permit for the installation or use of a battery-charged fence that is additional to an alarm system permit issued by the local government."

ORS 195.870(3) (emphases added). Gresham had previously adopted GRC 7.15.040(7)(d), which prohibits battery-charged fences, except in "industrial land use districts" when further conditions are met.

Plaintiff sells security systems, including a two-fence system that consists of an outer non-electrified fence and an inner battery-charged fence. Plaintiff sells its systems primarily to businesses that store valuables outside. Two such businesses—both automobile repair shops—contracted with plaintiff to purchase security systems that included battery-charged fences. Plaintiff applied for electrical permits from the city to install the systems at the properties. The city initially issued permits for both properties, and plaintiff installed the systems, including the battery-charged fences. After installation, plaintiff asked to have the systems inspected by the city. Rather than conducting an inspection, however, the city flagged the permits as requiring resubmittal, noting, "Does not comply with GRC 7.15.040(7)(d)."

One of the auto repair shops is located at 202nd and Burnside (the 202nd/Burnside Property) and is in an area zoned "Ruby Junction Station Center—Ruby Junction Overlay" (SC-RJ). The second repair shop is on Highland Drive (the Highland Property) and is in an area that is zoned "Moderate Commercial" (MC). Both zones allow for some residential uses. SC-RJ allows several different uses, including residential in the form of duplexes, townhouses, affordable housing, and others. GDC 4.0420. MC allows "housing as a secondary use, with multifamily being developed in conjunction with commercial construction." GDC 4.0415. In fact, plaintiff asserts, and the city does not dispute, that the only zones in the city that do not permit any residential use are "heavy industrial" zones, which comprise a small portion of the city. Neither the 202nd/Burnside Property nor the Highland Property is in an "industrial land use district" as that term is used in GRC 7.15.040(7)(d).

When the city refused to conduct an inspection, plaintiff brought this action, seeking, in part, a declaratory judgment that GRC 7.15.040(7)(d) is preempted by ORS 195.870(3). In the alternative, plaintiff claimed a violation of ORS 195.870(3) and the Oregon constitution. Both claims relied on the premise that ORS 195.870(3) allows local governments to prohibit only battery-charged fences in areas zoned *primarily* for residential use, not in areas zoned primarily for commercial or industrial uses that also allow some residential uses. Because, in plaintiff's view, GRC 7.15.040(7)(d) prohibited battery-charged fences in areas zoned primarily for commercial or industrial uses but that also allow some residential uses, that ordinance was unlawful under ORS 195.870(3).

Plaintiff moved for partial summary judgment on its claim for declaratory relief and the city moved for summary judgment, as relevant here, on the declaratory relief claim and the alternate violations claims.

The trial court denied plaintiff's motion and granted the city's motion as to plaintiff's declaratory relief claim and violation of ORS 195.870(3) claim. The trial court concluded that ORS 195.870(3)'s text—"zoned or used for residential use"—"refers to property that either (1) is in a zone where residential use is permitted ('zoned… for residential use'), or (2) is actually in residential use even if such use is not permitted in the zone, *e.g.*, a non-conforming use ('used for residential use')."[1] The court then issued a limited judgment dismissing the claims.

Plaintiff appeals from that limited judgment and, in a single assignment of error, contends that the trial court erred in holding that ORS 195.870(3) does not preempt GRC 7.15.040(7)(d). Plaintiff reprises its argument that ORS 195.870(3) preempts GRC 7.15.040(7)(d) because ORS

---

[1] Both parties focus their argument on the phrase "zoned *** for residential use." While plaintiff contends that the "or used" portion of the full phrase "zoned or used for residential use" would be rendered meaningless if "zoned *** for residential use" includes zones that permit any residential use, that argument ignores nonconforming uses within zoning. Neither party objects to the trial court's conclusion that, in context, "or used for residential use" refers to property actually in residential use even if such use is not permitted in the zone (a non-conforming use). Therefore, our discussion focuses on the phrase "zoned *** for residential use."

195.870(3) allows local governments to prohibit the installation of battery-charged fences only on property zoned primarily for residential use. The city, on the other hand, contends that GRC 7.15.040(7)(d) is not preempted because ORS 195.870(3) allows local governments to prohibit battery-charged fences in *any* zone where residential use is permitted, not just where the zone's use is primarily residential.

When, as here, there are no genuine issues of material fact, we review the trial court's decision on cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law. *See 21+ Tobacco and Vapor Retail Assn. v. Multnomah County*, 339 Or App 554, 565, 570 P3d 287 (2025); ORCP 47 C; *see, e.g.*, *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Applying that standard of review, we agree with the trial court that the city is entitled to judgment as a matter of law because GRC 7.15.040(7)(d) is not preempted by ORS 195.870(3); the phrase "zoned * * * for residential use" refers to zones where residential use is permitted—not merely zones where the primary purpose is residential use.

Under Article XI, section 2, of the Oregon Constitution, cities that adopt municipal charters are provided with "home rule." *Owen v. City of Portland*, 368 Or 661, 666-67, 497 P3d 1216 (2021). The City of Gresham, having adopted such a charter, has home-rule authority. Although home-rule authority can generally be exercised to adopt laws in areas also regulated by state law, it cannot be exercised to adopt laws that are incompatible with state law. *Id.* at 667. If a city does adopt a law that is incompatible with state law, that local law is preempted. "The analytical process for determining whether state law preempts a local law in Oregon is well established[.]" *Id.* "The question is whether a local law is incompatible with state law, either (1) because both cannot operate concurrently or (2) because the legislature meant its law to be exclusive." *21+ Tobacco and Vapor Retail Assn.*, 339 Or App at 565 (internal quotation marks and citation omitted). Here, plaintiff argues that only the second type of incompatibility is present—that the legislature meant ORS 195.870(3) to be exclusive and thus

ORS 195.870(3) preempts GRC 7.15.040(7)(d). Therefore, our analysis focuses on the second type of preemption.

In analyzing whether the legislature meant a state law to be exclusive, "we assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent." *Rogue Valley Sewer Services v. City of Phoenix*, 357 Or 437, 450, 353 P3d 581 (2015) (internal quotation marks and citation omitted). Only when a statute's text, context, and legislative history "unambiguously expresses an intention to preclude local governments from regulating in the same area as that governed by the statute" will the statute preempt local ordinances. *Id.* at 450-51. The party challenging a local ordinance enacted through a city's home-rule authority as preempted by state law thus has a heavy burden. *Owen*, 368 Or at 668.

Again, the relevant provision is ORS 195.870(3)(a), which provides:

"(3)   Except as required by state building code, a local government, as defined in ORS 197.015, may not adopt or enforce any ordinance, land use regulation or building code for property not zoned or used for residential use that:

"(a)   Prohibits the installation or use of a battery-charged fence."

That statutory provision unambiguously preempts a local ordinance that prohibits battery-charged fencing "for property not zoned or used for residential use." Although the legislature did not use the word "preempt," use of that express term is not necessary to manifest an intention to preclude regulation by local government. *See AT&T Communications v. City of Eugene*, 177 Or App 379, 395, 35 P3d 1029 (2001), *rev den*, 334 Or 491 (2002). The use of the phrase "a local government *** may not adopt or enforce," shows some preemptive intent. *See id.* at 395 (collecting examples of statutes with preemptive effect that include phrases like "no municipality shall enact or enforce" and "[n]o city *** shall adopt or enforce"). The question we confront here is whether GRC 7.015.040(7)(d) is the kind of local ordinance within the scope of the statute's preemption, because its prohibition on

battery-charged fencing includes areas zoned for any residential use, not just areas zoned primarily for residential use.

Here, plaintiff's argument that the ordinance is preempted focuses on the phrase "zoned *** for residential use." Plaintiff argues that when that phrase is given its plain meaning, it is evident that the legislature intended to preempt any local ordinance that prohibits the installation or use of a battery-charged fence on property zoned primarily for residential use. Plaintiff, acknowledging that the statute does not explicitly define what "zoned *** for residential use" means, points to the dictionary definitions of "zone" and "for" to conclude that the phrase means "'an area created for a particular purpose' 'with the purpose or object of' residential use." *Webster's Third New Int'l Dictionary* 2660, 886 (unabridged ed 2002).

We start our statutory interpretation by examining the text of ORS 195.870(3) in its context. *See Owen*, 368 Or at 668. We agree with plaintiff that, when utilizing the dictionary definition, "for" conveys an element of purpose. But we disagree with plaintiff's second premise, that the text suggests that that purpose is for exclusive or primarily residential purpose. Plaintiff's interpretation would require us to insert a word—such as "primarily"—before "residential use," which we cannot do. *See* ORS 174.010 (reminding courts not to insert what has been omitted when trying to ascertain the meaning of a statute). Further, plaintiff's interpretation ignores the fact that the preemption under ORS 195.870(3) is stated narrowly: the statute prohibits local governments from adopting or enforcing ordinances that ban battery-charged fences "for property *not* zoned *** for residential use." (Emphasis added.) In other words, the statute allows local governments to prohibit battery-charged fences in areas that are zoned for residential use and, concomitantly, prohibits local governments only from adopting laws that restrict those types of fences in areas that are not zoned for residential use.

Thus, we understand the plain meaning of the phrase "zoned *** for residential use," to refer to a zone where residential use is a permitted purpose—not a zone where the primary purpose is residential use.

Turning to context, we note that ORS 195.870 is a short statute, and it is unrelated to a broader statutory scheme. The statute has three subsections. Subsection (1) defines some of the terms used in the other subsections, but not any of the words in the phrase "zoned * * * for residential use," leaving us to rely on the plain meaning of the phrase, as discussed above. Subsection (2) dictates certain requirements for battery-charged fences, including that such a fence must comply with certain International Electrotechnical Commission (IEC) standards, must use a battery that does not exceed 12 volts, must be surrounded by a perimeter fence or wall that is at least five feet in height and nonelectric, and must be marked with warning signs indicating the fence is electric. The requirements of subsection (2) describe a fence that would generally be considered incompatible with areas zoned for residential use, which suggests that the legislature likely did not intend to require cities to allow such fences in areas where any type of residential use is permitted.[2] Additionally, the other provisions in subsection (3) do not favor plaintiff's interpretation;

_____

[2] ORS 195.870(1) and (2) provide, in full:

"(1) As used in this section:

"(a) 'Alarm system' means any electrical, mechanical or electronic device or sensor used to prevent, detect or alert law enforcement or occupants of burglary, theft, or intrusion of a structure or a vehicle used as a commercial structure.

"(b) 'Battery-charged fence' means a fence that interfaces with an alarm system in a manner that enables the fence to cause the connected alarm system to transmit a signal intended to summon law enforcement in response to an intrusion and has an energizer that is driven by battery.

"(c) 'IEC standards' means the standards set by the International Electrotechnical Commission as most recently published on or before January 1, 2021.

"(2) A battery-charged fence:

"(a) Must use a battery that is not more than 12 volts of direct current;

"(b) Must produce an electric charge on contact that does not exceed energizer characteristics set for electric fence energizers by IEC standards;

"(c) Must be surrounded by a nonelectric perimeter fence or wall that is not less than five feet in height;

"(d) May not be higher than the greater of 10 feet in height or two feet higher than the height of the nonelectric perimeter fence or wall; and

"(e) Must be marked with conspicuous warning signs that are located on the fence at not more than 30-foot intervals and that read: 'WARNING: ELECTRIC FENCE.'"

instead, they simply state that, again for property not zoned or used for residential use, local governments are not allowed to impose alarm system or battery-charged fence requirements that are inconsistent with the IEC standards or ORS 195.870, or to require a permit that is additional to an alarm system permit for the installation or use of a battery-charged fence.

For its part, plaintiff suggests that land use laws provide contextual support for its argument. Among other statutes, plaintiff looks to ORS 195.300(24), which defines "zoned for residential use" for statutes other than ORS 195.870 to mean "zoning that has its primary purpose single-family residential use." Plaintiff also points to other laws that use "zoned for residential use" or similar language that have a definition that excludes mixed-use zones.

Assuming they are relevant, those statutes do not lend support to plaintiff's position. At best, those statutes illustrate that plaintiff's position would require us to insert what has been omitted. In several of those statutes, the legislature defined the phrase "zoned for residential use" by explicitly using terms like "primarily" or "primary purpose." *See* ORS 197A.420(1)(j); ORS 195.300(24). That demonstrates that the legislature knows how to more narrowly define that phrase when that is what the legislature intends "zoned for residential use" to mean. *See, e.g.*, *State v. Bailey*, 346 Or 551, 562, 213 P3d 1240 (2009) ("[W]hen the legislature includes an express provision in one statute and omits the provision from another related statute, we assume that the omission was deliberate."). It did not adopt a narrow definition to apply to ORS 195.870(3).

Turning briefly to the legislative history of ORS 195.870, we do not find it to be particularly illuminating, and both parties recognize that it does not definitively answer the question before us. *See State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009) ("[T]he court will consult [legislative history] after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis."). The legislature did not specifically discuss the meaning of the phrase "zoned *** for residential

use." While there was a general discussion about the statute having a preemptive effect, that discussion did not pertain to the phrase "zoned *** for residential use." There is nothing in the statute's legislative history that unambiguously conveys an intent to compel cities to allow battery-charged fences in any zone where residential use is not the primary use. Ultimately, because we do not find the legislative history useful for our analysis, we instead rely on our understanding of ORS 195.870(3) based on its text in context. That text and context leads us to conclude that the legislature intended the phrase "zoned *** for residential use" to refer to a zone where any residential use is permitted—not a zone where the primary purpose is residential use. ORS 195.870(3) thus does not preempt ordinances that prohibit battery-charged fences on property that is zoned for residential use.

So framed, we turn back to the city's ordinance to assess whether ORS 195.870(3) preempts GRC 7.15.040(7)(d). Again, that ordinance prohibits battery-charged fences in all zones except for "industrial land use districts." All zones outside of industrial land use districts permit some residential use. Therefore, GRC 7.15.040(7)(d) does not, as ORS 195.870(3) forbids, prohibit the installation or use of a battery-charged fence in any area not zoned for residential use. The trial court thus correctly concluded that ORS 195.870(3) does not preempt GRC 7.15.040(7)(d).

However, the proper disposition for a declaratory judgment claim like plaintiff's is issuance of a declaration of the parties' rights, not, as the trial court did here, dismissal of plaintiff's declaratory judgment claim. *See, e.g.*, *Owen v. City of Portland*, 305 Or App 267, 286-87, 470 P3d 390 (2020), *aff'd*, 368 Or 661, 497 P3d 1216 (2021) (similarly concluding that issuance of a declaration as to the parties' rights is the proper disposition in a declaratory judgment action).

Vacated and remanded for entry of a judgment declaring the parties' rights.